UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF REPUBLIC OF KAZAKHSTAN FOR AN ORDER DIRECTING DISCOVERY FROM CLYDE & CO. LLP PURSUANT TO 28 U.S.C. § 1782 | Civil Action No. 15 Misc. 0081 (P1)<br><br>**Memorandum of Law in Support of Motion to Intervene, Motion to Vacate Order Permitting Discovery Pursuant to 28 U.S.C. § 1782, and Motion to Quash Subpoena** |

Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (hereafter, "Intervenors") hereby move (a) to intervene under Fed. R. Civ. P. 24(a)(2) for the limited purpose of moving to vacate and/or quash (1) this Court's March 30, 2015 order (the "Order") granting the Republic of Kazakhstan ("ROK") leave to seek and obtain discovery from Clyde & Co. LLP ("Clyde & Co.") pursuant to 28 U.S.C. § 1782, and (2) the subpoena duces tecum dated March 27, 2015 (the "Subpoena") and served on Clyde & Co. pursuant to the Order; (b) to vacate the Order; and (c) to quash the Subpoena. Intervenors' motion should be granted in its entirety, for all the reasons that follow.

**Facts**

On December 19, 2013, an arbitral tribunal (the "Tribunal") seated in Stockholm, Sweden and convened under the auspices of the Stockholm Chamber of Commerce issued an arbitral award (the "Final Award") in favor of Intervenors and against the ROK. *See* Declaration of Charlene C. Sun, dated April 10, 2015 ("Sun Decl."), ¶ 3. In the Final Award, the Tribunal found that the ROK had illegally seized an LPG Plant (the "LPG Plant"), and found that the value of the LPG Plant at the time of this seizure was US$199 million. Sun Decl. ¶ 4. The Final Award obligates the ROK to pay Intervenors the sum of US $506,660,597.40, plus interest. The ROK has failed to make any payment on the Final Award, despite Intervenors' demand therefor.

1

Sun Decl. ¶ 5.  Accordingly, Intervenors, on September 30, 2014, commenced an action before the U.S. District Court for the District of Columbia seeking recognition of the Final Award.  Sun Decl. ¶ 6.

The ROK has commenced an action (the "Swedish Action") in the Svea Court of Appeal (the "Swedish Court") in which it seeks an order setting aside the Final Award.  *See* Declaration of Bo Nilsson, dated April 9, 2015 ("Nilsson Decl.") ¶ 4.  In that action, the ROK asserts, *inter alia*, that that the arbitral tribunal ("Tribunal") committed "procedural errors" in failing to consider the testimony of one of the ROK's expert witnesses regarding the value of the LPG Plant, and by further failing to consider the ROK's argument that Intervenors were only entitled to 50% of the value of the LPG Plant because Respondent Vitol owned a 50% beneficial interest in the LPG Plant.  Nilsson Decl. ¶ 10.

Through an *ex parte* petition for assistance pursuant to 28 U.S.C. § 1782 (the "Petition") filed on March 27, 2015, the ROK sought the disclosure of various documents from prior and pending arbitrations involving one or more of the Intervenors or their affiliates concerning the valuation of the LPG Plant.  Sun Decl. ¶ 7.  In the Petition, the ROK asserted that the documents from the three arbitrations are relevant to the Swedish Action because "[t]he $199 million valuation of the LPG Plant is, among other things, directly at issue in Petitioner's efforts in the Swedish Proceeding to set aside the SCC Award."  Petition ¶ 4.  The ROK, however, has offered no explanation about why, or how, these documents might be of use to the Swedish Court in connection with the Swedish Action.

Intervenors were informed of the Order and Subpoena on April 2, 2015 by letter sent by Clyde & Co.to Intervenors' counsel.  Sun Decl. ¶ 8; Ex. A.

2

**Argument**

**I. Intervenors Are Entitled to Intervene For Purposes of Quashing the Subpoena**

    **A. Intervenors May Intervene as of Right**

A party is granted an automatic right to intervene under Federal Rule of Civil Procedure 24(a) when four requirements are satisfied: "(1) a timely application, (2) asserting an interest relating to the property or transaction which is the subject of the action (3) where the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is not adequately represented by the parties." *Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996) (citing *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)); *see also In re Application of Hill*, No. M19-117, 2007 WL 1226141, at *2 (S.D.N.Y. Apr. 23, 2007) (applying Rule 24 intervention standards to motion to intervene to quash subpoena issued pursuant to Section 1782).

Intervenors meet all four requirements. First, this motion is timely. The Court determines the timeliness of a motion considering all of the circumstances of the case, particularly "how long the applicant had notice of the interest before it made the motion to intervene; the prejudice resulting from any delay; the prejudice to the applicant if the motion is denied; and any other unusual circumstances." *Sackman*, 167 F.R.D. at 20. Here, because the instant motion is made a mere eight days after Intervenors were first given notice of the Order and Subpoena by Clyde & Co. on April 2, 2015,[1] it must be considered timely.

---

[1] Intervenors' counsel gave the ROK's counsel notice of the Intervenors' intention to quash the Subpoena on April 3, in connection with Intervenors' request that the ROK voluntarily stay the compliance date on the Subpoena. The ROK's counsel refused on the basis that Clyde & Co. had told them that it would not comply with the Subpoena until any pending objections were resolved. Clyde & Co. has stated to Intervenors that Norton Rose was not authorized to make such statement on its behalf and, contrary to what was said by Norton Rose, would only refrain from production if Norton Rose agreed to stay the Subpoena, which it did not. Sun Decl. ¶¶ 9-11; Exs. B, C, D.

3

Second, Intervenors have an interest in the documents subject to the Order, and the disposition of this case clearly could impede Intervenors' ability to protect that interest. A permissible interest for intervention must be "direct, substantial, and legally protectable." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92,97 (2d Cir. 1990). Here, although the Subpoena was not served on Intervenors, the documents sought are intended for use in the Swedish Action against Intervenors. Intervenors therefore clearly have standing to challenge the validity of the Subpoena. *See In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (holding in connection with subpoena served on bank that "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties"); *In re Letters Rogatory from the Justice Court., Dist. Of Montreal Can.*, 523 F.2d 562, 564 (6th Cir. 1975) (holding that "a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of the applicable statute, here 28 U.S.C. § 1782.").

Finally, Intervenors' interests in this matter are not adequately represented and protected by the current party to the case, Clyde & Co. To satisfy this prong, Intervenors need not show that their interests would in fact be inadequately represented, but only that "representation of [its] interest 'may be' inadequate." *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (emphasis added) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)). The burden of making this showing is "minimal." *Sackman*, 167 F.R.D. at 22 (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528,538 n.10 (1972)). Clyde & Co. serves as counsel to various parties that were or are adverse to Intervenors in past and pending arbitrations. Moreover, Clyde & Co.'s April 2 letter to Intervenors suggests that it does not intend to oppose the Subpoena and states that Clyde & Co. considers itself to be "under legal obligation" to

produce the requested documents by April 10, 2015. Sun Decl ¶ 8; Ex. A. Intervenors therefore must assert their own objections to the Subpoena and Order.

### A. In the Alternative, Intervenors Should be Granted Permissive Intervention

If the Court finds that Intervenors do not satisfy the requirements for intervention as of right, it should grant Intervenors permissive intervention under F.R.C.P. 24(b)(2), which permits intervention "on timely motion" by anyone who "has a claim or defense that shares with the main action a common question of law or fact."

Permissive intervention is within the Court's broad discretion. *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003); *see U.S. Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978). The commonality requirement that the "claim or defense and the main action have a question of law or fact in common," is "not to be read in a technical sense, but only require[s] some interest on the part of the applicant." *Sackman*, 167 F.R.D. at 22-23 (citations omitted). Rather, the requirement "may be satisfied by intervenors who seek to challenge discovery orders." 6 EDWARD J. BRUNET & JERRY E. SMITH, MOORE'S FEDERAL PRACTICE-CIVIL § 24.11 (2012); *see, e.g., Sackman*, 167 F.R.D. at 22-23. The primary factor is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Sackman*, 167 F.R.D. at 23. "Other relevant factors include the nature and extent of the intervenor's interest, whether their interests are adequately represented and whether the applicants for intervention will contribute to a full development of the issues presented for adjudication." *Id*. "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria." *Mass. Bricklayers and Mason Funds v. Deutsche Alt–A Secs.*, 273 F.R.D. 363, 365 (E.D.N.Y. 2011).

Intervention will not unduly delay or prejudice the rights of the current parties. As

discussed *supra*, Intervenors seek to intervene for the purpose of asserting their own rights, which cannot be adequately protected by the current parties. In addition, Intervenors' presence in this case will allow them to assist the Court by providing a fuller picture of the case and the disputed issues in the Swedish Action. To avoid delay, Intervenors have simultaneously moved to vacate the Order and quash the Subpoena, so that the Court, should it grant Intervenors' motion to intervene, may then address the motion to vacate the Order and quash the Subpoena without delay.

In summary, Intervenors should be permitted to intervene in this case under either Rule 24(a)(2) or 24(b)(2) for purposes of seeking to vacate the Order and quash the Subpoena.

## II. The Subpoena Should Be Quashed and the Order Vacated

The ROK's Petition failed to satisfy the both the statutory requirements for, and the discretionary factors that would support, its requested relief. For the reasons that follow, Intervenors respectfully request that the Court vacate the Order and quash the Subpoena.

### A. The ROK Failed to Satisfy the Requirements of 28 U.S.C. § 1782

#### 1. The ROK is Not an Interested "Person" Under 28 U.S.C. § 1782

28 U.S.C. § 1782 provides, in pertinent part, that

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or **upon the application of any interested person** and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

(Emphasis supplied). Thus, the statute provides this Court with authority to assist any "interested person" who makes an application for discovery from another "person" found in the

district for use in a proceeding before a foreign tribunal.  These statutory requirements are jurisdictional in nature.  *See Al Fayed*, 229 F.3d at 273, 276 (affirming district court's holding that it lacked jurisdiction to issue subpoena pursuant to Section 1782 where discovery was sought from a foreign state, which was not a "person" under the statute); *see also In re Application of Yukos Hydrocarbons Investments, Ltd.*, No. 5:09-MC-0078, 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009) (jurisdiction exists "[i]n the event the three statutory requirements for invoking the court's jurisdiction under section 1782 are met...."); *Application of Sumar*, 123 F.R.D. 467, 471 (S.D.N.Y. 1988) (noting that subject matter jurisdiction is lacking where the applicant fails to satisfy section 1782's requirements that the person be found and the discovery is in aid of a foreign proceeding).

> The ROK is not a "person" for purposes of Section 1782.  This Court has previously held that an application for discovery under Section 1782 may not seek discovery from a foreign state because a foreign state is not a "person" within the meaning of Section 1782.  In *Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, No. 11-cv-4363, 2012 WL 966042 (S.D.N.Y. Mar. 20, 2012) (Wood, J.), this Court relied upon D.C. Circuit precedent holding that a foreign state was not a "person" for purposes of Section 1782 and denied an application for discovery against the Government of Laos.  Specifically, this Court found persuasive the D.C. Circuit's analysis in *Al Fayed v. Cent. Intelligence Agency*, 229 F.3d 272 (D.C. Cir. 2000) that the Dictionary Act, 1 U.S.C. § 1, which defined the word "person" as "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals," did not include foreign states within that definition.  *Id*. at 274.  This Court has applied the same analysis in at least one other case in this district.  *See McKevitt v. Mueller*, 689 F. Supp. 2d 661, 668 n.1 (S.D.N.Y. 2010) (Koeltl, J.) ("The

Government is not a 'person' under § 1782 and therefore cannot be compelled to provide documents for use in foreign litigation.").

Although here, the foreign state is the "person" requesting the discovery, rather than the "person" from whom discovery is sought, established rules of statutory construction require that the term must not be construed differently in the former context than it is in the latter. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 126 S.Ct. 1503 (2006) ("Generally, 'identical words used in different parts of the same statute are ... presumed to have the same meaning.'") (citations omitted). As the ROK is not an "interested person" under Section 1782, its Petition should have been denied for lack of jurisdiction. Accordingly, the Order should be vacated, and the Subpoena should be quashed.

### 2. The Subpoena Improperly Seeks Documents Held By a Foreign Entity Not Found in This District

The ROK's Petition also failed to satisfy the statutory requirement that discovery be sought from a person who "resides or is found" in the district. The ROK's Petition seeks discovery from " Clyde & Co. LLP," an entity that is located in London, England, not in New York. Because the ROK has not sought discovery from a "person resid[ing] or … found" in this district, its Petition should have been denied for lack of jurisdiction.

The ROK named as respondent, and directed the Subpoena to, Clyde & Co, whose website makes clear is an entity which "has its headquarters at its registered office, The St Botolph Building, 138, Houndsditch, London, EC3A 7AR, United Kingdom." *See* Sun Decl. ¶ 12; Ex. E. Clyde & Co. maintains "branches" in various other cities in the United Kingdom, France, Qatar and the United Arab Emirates, but none in the United States. *Id*. The ROK served the Subpoena in New York, however Clyde & Co's website indicates that the entity in New York is a separate entity named "Clyde & Co US LLP" ("Clyde US"), "a limited liability partnership

8

formed under the laws of the State of Delaware." *Id*.

Despite the fact the Subpoena was served upon Clyde US in New York, it is clear that the entity the ROK seeks discovery from is Clyde & Co., not Clyde US.  First, the Subpoena is directed to "Clyde & Co. LLP."  Second, the ROK's Petition states that the ROK seeks discovery from counsel to "Vitol/Vitol FSU B.V. and Arkham SA" in the three arbitrations in which various of the Intervenors and/or their affiliates are involved.  Petition, at 2-3.  However, Vitol, Vitol FSU B.V., and Arkham SA are represented in those arbitrations by Clyde & Co., not Clyde US.  *See* Sun Decl. ¶ 13.

Clyde & Co. does not "reside" and is not "found" in this district.  Indeed, the ROK makes no allegation that Clyde & Co. was served while present in this district, or that Clyde & Co. maintains systematic or continuous local activities in the district such that it should be "found" here for purposes of Section 1782.[2]  *See In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (quashing subpoena by relying on petitioners' failure to provide any authority that a corporation was "found" in a district for section 1782 purposes when it was neither headquartered nor incorporated there); *see also In re Inversiones y Gasolinera Petroleos Valenzuela S. de R.L.*, No. 08-mc-20378, 2011 WL 181311, at * 7 (S.D. Fla. Jan. 19, 2011) (finding that when a corporation's place of incorporation or headquarters lies outside the district, then the petitioner has the burden of establishing that the corporation "undertakes systematic and

---

[2] As this Court noted in *In re Godfrey*:

> Professor Hans Smit, the drafter of Section 1782, has explained that insofar as the word "found" is applied to corporations, "it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998).

*Id*. at 422.

continuous local activities in order for the corporation to be found there for the purposes of section 1782").

Thus, because the ROK seeks discovery from "Clyde & Co. LLP," an entity which is not "found" in this district, its Petition should have been denied for lack of jurisdiction.

### B. The Petition Should Have Been Denied Based on Consideration of the Relevant Discretionary Factors

Not only should the Petition have been denied because the ROK failed to satisfy the mandatory requirements for Section 1782 relief, it should also have been denied upon consideration of the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). In *Intel*, the Supreme Court held that, even where Section 1782's threshold requirements are met, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id*. at 264. Rather, in evaluating petitions under section 1782, a court should weigh several discretionary factors, such as whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent relief under § 1782; "the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance"; and "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id*. at 264-65. In examining these factors, courts should consider "'the twin aims of [section 1782]: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP., 376 F.3d 79, 84 (2d Cir. 2004) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)).

Even if the Court was authorized to grant the ROK's Petition – it was not, as discussed in

the prior section – the issued Subpoena and Order should nonetheless be quashed/vacated because the discovery sought by the ROK is inappropriate given the character of the Swedish Action, could be obtained from Intervenor Ascom Group S.A. ("Ascom") through the Swedish Action, and seeks to circumvent foreign discovery restrictions.

### 1. The Discovery is Inappropriate Given the Character of the Foreign Proceedings

The ROK seeks documents submitted and entered in other arbitrations regarding the valuation of the LPG Plant that the Tribunal determined was illegally seized from Intervenors by the ROK.  Although the ROK claims that "[t]he $199 million valuation of the LPG Plant is … directly at issue in Petitioners' efforts to set aside the SCC Award," it does not explain how the valuation of the LPG Plant as determined in other arbitration proceedings is in any way relevant to the grounds for setting aside an arbitral award under Swedish law.  Indeed, much like the grounds for vacating an award under the Federal Arbitration Act, the grounds for setting aside an arbitral award under the Swedish Arbitration Act ("SAA"), are narrow and in accord with the UNCITRAL Model Law on International Commercial Arbitration.  *See* Nilsson Decl. ¶ 5; *see also Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255(2d Cir. 2003) (holding that an arbitration award should not be vacated under the FAA and "should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.'") (citations omitted).  The Swedish Court is not empowered under the SAA to conduct a plenary review of the substantive correctness of the Tribunal's analysis in the Final Award; rather, its review of an arbitral award is limited to deciding whether any jurisdictional or procedural errors in the arbitration meet the high standard for setting aside an arbitration award under the SAA.  Nilsson Decl. ¶ 6.

Given the narrow scope of review in the Swedish Action, the universe of documents that

would be relevant to the ROK's Petition in that case is primarily limited to documents from the arbitral record.  The only extrinsic documents that could even plausibly be relevant to the Swedish Action might be those related to alleged jurisdictional or procedural errors, but the documents sought by the ROK are relevant only to the Tribunal's calculation of damages, a merits issue that is not subject to the Swedish Court's *de novo* review.  *See* Nilsson Decl. ¶¶ 7-10 (under Swedish law, a "party cannot 'relitigate' the substantive merits of an issue in the arbitration").

Notably, the only argument advanced by the ROK in the Swedish Action related to the valuation of the LPG Plant is the ROK's claim that the Tribunal committed "procedural errors" by allegedly failing to consider its expert's evidence with respect to the valuation of the LPG Plant, and by allegedly failing to consider the ROK's argument that Intervenors' damages should be halved due to Respondent Vitol's stake in the LPG Plant.  However, the documents sought by the ROK herein have absolutely no relevance to those claims, as the Tribunal could not have committed any "procedural error" based upon a failure to consider evidence that was not in the arbitral record at the time of the arbitration.  Indeed, it is difficult to understand how the discovery sought by the ROK would further the ROK's case at all, or provide any assistance whatsoever to the Swedish Court.  It is, therefore, highly unlikely that the Swedish Court would compel the production of the documents sought by the ROK because such documents are completely irrelevant to the Swedish Action.  Nilsson Decl. ¶ 12.

> **2. The Documents Sought Are Within Reach of the Swedish Court and the ROK's Attempt to Obtain Them Through This Court Represents an Attempt to Circumvent Foreign Discovery Restrictions**

The ROK's Petition should also have been denied because the documents requested by the ROK could have been -- but were not -- sought directly from one of the Intervenors, Ascom,

over whom the Swedish Court has jurisdiction for purposes of the Swedish Action. Nilsson Decl. ¶ 11. As the Supreme Court explained in *Intel*, U.S. courts need not grant petitions for discovery assistance where the documents sought are within the jurisdictional reach of the foreign tribunal because:

> A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id*. at 244. The ROK seeks documents from other arbitrations relating to the valuation of the LPG Plant at issue in the arbitration underlying the Final Award. Ascom, who is a party to the Swedish Action, is also party in one of those arbitrations, and therefore would have the documents that the ROK seeks. The ROK, however, has not asked the Swedish Court to compel Ascom's production of those documents, despite the fact that the Swedish Court has jurisdiction over Ascom and the authority to order such production. Nilsson Decl. ¶ 9. The ROK's failure to approach the Swedish Court with such a request, and its decision to instead seek this Court's assistance, speaks volumes about the irrelevance of those documents to the Swedish Action, as set forth in Section II.B.1, *supra*. *See* Nilsson Decl. ¶¶ 9-10. The ROK's Petition moreover represents an attempt to circumvent the Swedish court's foreign proof-gathering restrictions and policies. *See Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191 at *1 (S.D.N.Y. Nov. 9, 2009) (denying motion to compel under Section 1782, because the applicant "never sought the subject § 1782 documents in the French Tribunal. Regardless of whether [the applicant] could have gotten the French Courts to compel production of the documents now sought, [the applicant's] motion is clearly an attempt to circumvent foreign proof gathering restrictions"). For these reasons, the circumstances in this case weighed heavily against granting the ROK's

Petition, and the Order and Subpoena should accordingly be vacated/quashed.

## **Conclusion**

For all of the reasons above, Intervenors respectfully request that this Court (1) grant the motion to intervene in these proceedings, (2) vacate the Order, and (3) quash the Subpoena.

Dated:     New York, New York
           April 10, 2015

                                            Respectfully submitted,

                                            /s/ James E. Berger
                                            James E. Berger (JB 6605)
                                            Charlene C. Sun (CS 1281)

                                            King & Spalding LLP
                                            1185 Avenue of the Americas
                                            New York, NY 10036

                                            *Attorneys for Intervenors*