**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **IN RE APPLICATION OF REPUBLIC OF KAZAKHSTAN FOR AN ORDER DIRECTING DISCOVERY FROM CLYDE & CO. LLP PURSUANT TO 28 U.S.C. § 1782** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 15-mc-00081 (P1)** |

**REPUBLIC OF KAZAKHSTAN'S OPPOSITION TO MOTION TO INTERVENE, MOTION TO VACATE ORDER PERMITTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 , AND MOTION TO QUASH SUBPOENA**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT ................................................................................................................... 6

    I.    The Petition Satisfies The Statutory Requirements Of 28 U.S.C. § 1782 ......................... 6

        A.    Clyde & Co. LLP Is "Found" In The Southern District Of New York ......................... 6

        B.    Kazakhstan Is An "Interested Person" Within The Meaning Of § 1782 ...................... 8

            1.    Courts Have Held that Sovereign States Can Utilize § 1782 to Obtain Discovery ........................................................................................................ 9

            2.    The Purpose and Legislative History of § 1782 Supports the Conclusion that a Sovereign State is an "Interested Person" That Can Utilize § 1782 to Obtain Discovery ......................................................... 10

    II.    The *Intel* Factors Weigh In Favor Of The Court's Order Granting the Petition.............. 15

    CONCLUSION .................................................................................................................. 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al Fayed v. CIA*,
229 F.3d 272 (D.C. Cir. 2010) (United States) ............................................................9, 14, 15

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .................................................................17, 19

*In re Application of Gorsoan*,
2014 WL 7232262 ...................................................................................................................19

*In re Application of OOO Promnefstroy*,
2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ...............................................................17, 19

*Aventis Pharma v. Wyeth*,
2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) (the party against whom the §
1782 discovery was directed ***was*** a party to the foreign proceeding) ......................................17

*Brenner v. Sheraton Waikiki Hotel & Resort*,
2011 WL 4948826 (Nassau Co. Sup. Ct. 2011), *reversed in part on other
grounds on reargument*, 964 N.Y.S.2d 57 (Nassau Co. Sup. Ct. 2012) ....................................7

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002) .....................................................................................................7

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998) .....................................................................................................18

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ...................................................................................................20

*First Am. Corp. v. Price Waterhouse LLP*,
988 F. Supp. 353 (S.D.N.Y. 1997) ........................................................................................7, 8

*Frummer v. Hilton Hotels Int'l, Inc.*,
19 N.Y.2d 533, 281 N.Y.S.2d 41 (1967) ..................................................................................7

*In re Godfrey*,
526 F. Supp. 2d 417 (S.D.N.Y. 2007) ....................................................................................7, 8

*In re Gushlak*,
2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011), *aff'd sub nom. Gushlak v.
Gushlak*, 486 F. App'x 215 (2d Cir. 2012) ...........................................................................18

*HCSC-Laundry v. United States*,
    450 U.S. 1 (1981)..................................................................................................15

*Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*,
    500 U.S. 72 (1991)..........................................................................................11, 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)..........................................................10, 15, 16, 17, 18, 21

*In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada*,
    523 F.2d 562 (6th Cir. 1975) ........................................................................11, 13

*McKevitt v. Mueller*,
    689 F. Supp. 2d 661 (S.D.N.Y. 2010) (United States) ........................................9

*In re Microsoft*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006) ..........................................................8, 19

*Nardone v. United States*,
    302 U.S. 379 (1937)......................................................................................11, 14

*In re Republic of Ecuador*,
    2010 WL 4973492 (N.D. Cal. Dec. 1, 2010) ..........................................9, 10, 11, 14

*In re Republic of Ecuador*,
    2011 WL 4434816 (N.D. Cal. Sept. 23, 2011) ......................................9, 10, 11, 14

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
    376 F.3d 79 (2d Cir. 2004)........................................................................16, 18, 20

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic*
    *Republic*,
    2012 WL 966042 (S.D.N.Y. Mar. 20, 2012) (Laos)............................................9

*United States v. Cooper Corp.*,
    312 U.S. 600 (1941).............................................................................................11

*Vt. Agency of Natural Resources v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000)......................................................................................11, 12

*Yousuf v. Samantar*,
    451 F.3d 248 (D.C. Cir. 2006) ....................................................................11, 14

**Rules and Statutes**

28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-11 ................................................15

28 U.S.C. § 1442(a) ..................................................................................................12

28 U.S.C. § 1782 .................................................................................................. *passim*

**Other Authorities**

S. Rep. No. 88-1580, *reprinted in* 1964 U.S.C.C.A.N. 3782 ......................................................12

The Republic of Kazakhstan ("Kazakhstan") hereby opposes the Motion to Intervene, Motion to Vacate Order Permitting Discovery Pursuant to 28 U.S.C. § 1782, and Motion to Quash Subpoena (the "Motion"), ECF 7-10, filed by Anatolie Stati, Gabriel Stati, Ascom Group, S.A. and Terra Raf Trans Traiding Ltd. (collectively, the "Stati Parties").

The Motion is an attempt to obstruct the production of documents that are relevant to an ongoing foreign legal proceeding in which Kazakhstan is challenging an unjust $500 million arbitration award obtained against it by the Stati Parties.  The documents at issue, however, are not requested from the Stati Parties but rather from a third party, Clyde & Co. LLP ("Clyde & Co."), that was duly served and has raised no objection.  The Stati Parties' Motion is not rooted in any legitimate objection to the Subpoena, *e.g.*, that the Subpoena requires the disclosure of privileged or other protected matter.  *Cf.* Fed. R. Civ. P. 45(d)(3)(A)(iii).  Instead, the Motion makes technical arguments concerning 28 U.S.C. § 1782 that are contrary to case law and the positions that the Stati Parties have themselves taken in other pending § 1782 actions.  As set forth below, the Motion is without merit and should be denied.

## FACTUAL BACKGROUND

This miscellaneous action is but one part of an ongoing, international dispute between the parties arising out of a fundamentally flawed international arbitration award dated December 19, 2013, issued under the Arbitration Rules of the Stockholm Chamber of Commerce ("the SCC Award" or the "Award").  A brief recitation of the history of this dispute is necessary to understand the context of the present proceeding, and why the Stati Parties are so vigorously attempting to prevent this needed discovery from taking place.

The SCC Award decided claims brought by the Stati Parties against Kazakhstan. Declaration of Matthew Kirtland ("Kirtland Decl."), ¶¶ 4-7.  The Award was issued in an arbitration (the "SCC Arbitration") that was purportedly instituted under the terms of the Energy

1

Charter Treaty, I.E.L. III-0068, Dec. 17, 1994 (the "ECT"), to which Kazakhstan is a member. *Id.* ¶ 4.  The SCC Arbitration concerned various oil and gas assets operated by the Stati Parties within Kazakhstan.  *Id.* ¶ 5.  The arbitral tribunal (the "Tribunal") that issued the Award consisted of three members, none of which were appointed by Kazakhstan.  *Id.* ¶ 6.  The Stati Parties were able to obtain a ruling against Kazakhstan for nearly $500 million dollars ($497,685,101.00), plus interest and costs.  *Id.*

During the SCC Arbitration, the Stati Parties demanded compensation for alleged expropriation of certain assets in Kazakhstan.  *Id.* ¶ 5.  One of these assets was a liquefied petroleum gas plant (the "LPG Plant").  *Id.*  To support this claim, the Stati Parties submitted evidence and argument concerning three other companies:  Vitol S.A. ("Vitol"), Tolkynneftegas LLP ("TNG") and Montvale Invest Ltd. ("Montvale").  *Id.*  TNG and Montvale are affiliates of the Stati Parties.  *Id.*

As part of the SCC Award, the Tribunal relied on various allegations by the Stati Parties to award it $199 million in compensation for alleged expropriation of the LPG Plant.  Kirtland *Id.* ¶ 7.

The facts and circumstances giving rise to the Award constitute egregious violations of the provisions of the ECT, the arbitration rules of the SCC, and Kazakhstan's due process rights. *Id.* ¶¶ 8-10.  Consequently, in March 2014, Kazakhstan initiated proceedings before the Svea Court of Appeal in Stockholm, Sweden ("the Swedish Proceeding") to set aside the SCC Award under the Swedish Arbitration Act ("SAA").  *Id.* ¶¶ 8-9.  Kazakhstan has challenged the SCC Award under the SAA, asserting, *inter alia*, that: (1) the Tribunal violated fundamental principles of Swedish law by depriving Kazakhstan of its right to appoint its own arbitrator on its behalf; (2) no agreement to arbitrate existed because the Stati Parties did not comply with the

jurisdictional three month cooling-off period mandated by the Energy Charter Treaty; and (3) the Tribunal's $199 million valuation of the LPG Plant was so erroneous as to render that portion of the award subject to set aside, and, more specifically, that the LPG Plant should have been valued as scrap.  *Id.*  It is this third basis that is relevant to the present proceedings.

While Kazakhstan is challenging the Award in the Swedish Proceeding, the Stati Parties are concurrently attempting to enforce the Award internationally.  Kirtland Decl. ¶ 10.  *See also* No. 15-mc-91509 (D. Mass.), ECF 3, at 1-2 (Stati Parties representing that they have commenced proceedings against Kazakhstan in London, England and other European Union member states that have adopted the New York Convention).  One of those actions has been filed in the United States District Court for the District of Columbia ("Petition to Confirm"), No. 1:14-cv-01638-ABJ (D.D.C.), which Kazakhstan has opposed.   Kirtland Decl. ¶ 10; No. 1:14-cv-01638-ABJ (D.D.C.), ECF 20-22.  In this action, Kazakhstan is arguing that the Award is unenforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517 (the "New York Convention"), because (1) no valid arbitration agreement existed between the parties; (2) Kazakhstan was not given proper notice of the appointment of the arbitrator; (3) the composition of the arbitral authority and the arbitration procedure were not in accordance with the purported agreement of the parties to arbitrate; and (4) the recognition and enforcement of the Award would be contrary to the public policy of the United States.  Kirtland Decl. ¶ 10; No. 1:14-cv-01638-ABJ (D.D.C.), ECF 20 at 2.  This action is currently pending.  Kirtland Decl. ¶ 10.

Against this background, ***both parties*** have filed 28 U.S.C. § 1782 proceedings in this district seeking discovery related to the Award.  Kazakhstan is aware of three (3) pending § 1782

actions where the Stati Parties have, on an *ex parte* basis,[1] obtained orders from this Court authorizing it to issue subpoenas to third-party financial institutions commanding the production of Kazakhstan's banking information.  *See* No. 14-mc-00425-VSB (S.D.N.Y.) (filed 12-22-14) (seeking discovery from Bank of New York Mellon Corporation); No. 1:15-mc-00051-P1 (S.D.N.Y.) (filed 2-26-15) (seeking discovery from BNP Paribas Asset Management, Inc. and Fischer, Francis, Trees & Watts, Inc.); No. 1:15-mc-00052-P1 (filed 2-26-15) (seeking discovery from ABN Amro Holdings USA LLC)[2].  Kirtland Decl. ¶ 14.  The existence of the Stati Parties' § 1782 actions against Kazakhstan is not mentioned in the Motion.

On March 27, 2015, Kazakhstan filed the present Petition to seek the production of documents from Clyde & Co. that are relevant to its challenge of the Award in the Swedish Proceeding.  *Id.* ¶ 15; Declaration of Hans Bagner, ¶¶ 13-18.  After the filing of the Swedish Proceeding, Kazakhstan became aware of three separate arbitration proceedings concerning the LPG Plant, and that involved certain of the Stati Parties and/or their affiliates.  Kirtland Decl. ¶¶ 11-13. The first proceeding is between Vitol, Arkham SA and Montvale.  The second proceeding is between Vitol, Arkham SA and TNG.  The third proceeding is between Ascom and Vitol FSU B.V.  *Id.*  The first proceeding resulted in an arbitral award dated April 16, 2012, of which Kazakhstan has recently obtained a copy.  The second proceeding resulted in an arbitral award dated May 10, 2012, of which Kazakhstan has not been able to obtain a copy.  The third arbitration remains pending.  *Id.*  The valuation of the LPG Plant – which is relevant to the pending Swedish Proceeding – was at issue in the Prior Arbitrations.  *Id.*  Upon information and

---

[1]  Petitions under 28 U.S.C. § 1782 are properly filed ex parte.

[2]  Stati also has filed a § 1782 petition in the United States District Court for the District of Massachusetts but it has not yet been granted.  *See* No. 1:15-mc-91059 (D. Mass.) (filed 2-25-15) (seeking discovery from State Street Corporation regarding Kazakhstan's banking information).  Kirtland Decl. ¶ 14.

belief, the Stati Parties made representations in these other arbitrations concerning the valuation of the LPG Plant which are contrary to the representations it made in the SCC Arbitration, and that were relied upon by the Tribunal in issuing the Award against Kazakhstan.  *Id.*; Bagner Decl. ¶ 13.

Kazakhstan's Petition seeks discovery from Clyde & Co., the party representing Vitol/Vitol FSU B.V. and Arkham SA in all three of the Prior Arbitrations.  Kirtland Decl. ¶¶ 16-17.  The Petition seeks three discrete categories of documents:  (1) any orders or rulings that concern the LPG Plant; (2) any transcripts that contain testimony relating to the LPG Plant; and (3) any pleadings, submissions or witness evidence that relate to the LPG Plant.  ECF 1, ¶ 6; Kirtland Decl. ¶ 16.  This Court granted the Petition on March 30, 2015.  ECF 3;  Kirtland Decl. ¶ 17.

The New York office of Clyde & Co. is located within the Southern District of New York at 405 Lexington Ave, New York, NY 10174.  Kirtland Decl. ¶ 18.  Kazakhstan served Clyde & Co. on April 1, 2015 by serving the managing partner of its New York office – Mr. Michael Knoerzer.  *Id.* ¶ 19.  Mr. Knoerzer designated an associate in his office – Mr. Gregory Hoffnagle – to accept service on his behalf.  *Id.*  All partners in the New York office of Clyde & Co. are partners in "Clyde & Co. LLP" – the entity being served with the Subpoena.  *Id.* ¶ 20.  Clyde & Co. informed counsel for the Stati Parties of this in writing on April 9, 2015.  A copy of this letter is attached as Exhibit D to the Declaration of Charlene C. Sun.  *See* ECF 9-4, ¶ 4.

Clyde & Co. has not asserted any objections to service of the Subpoena or to the scope of documents that it requests.  Kirtland Decl. ¶ 21.  Based on communications between counsel, Clyde & Co., is prepared to produce the requested documents upon resolution of the objections filed by the Stati Parties.  *Id.*

On April 10, 2015 – the compliance date for the Subpoena, the Stati Parties filed the

Motion to Intervene and Quash.  Kirtland Decl. *Id.* ¶ 22.

## ARGUMENT

## I.     The Petition Satisfies The Statutory Requirements Of 28 U.S.C. § 1782

Kazakhstan's Petition satisfies the three requirements of § 1782:  (1) the discovery is

sought from a person who "resides or is found" in the Southern District of New York; (2) the

discovery is for use in a foreign tribunal; and (3) the request has been made by an "an interested

person".  § 1782(a).  The Motion does not contest the second requirement, that the discovery is

for use in a foreign tribunal.  As set forth below, its arguments with respect to the first and third

prongs lack merit.

### A.     Clyde & Co. LLP Is "Found" In The Southern District Of New York

The Stati Parties' argument that Clyde & Co. LLP – the recipient of the Subpoena –  is

not "found" in the Southern District of New York, Mot. at 8-9, has no merit, and borders on the

frivolous.  Contrary to the assertions in the Stati Parties' Motion, (1) Clyde & Co. LLP maintains

"continuous and systematic" contacts in this district and (2) a partner of Clyde & Co. LLP, who

is located in this district, accepted service of the Subpoena.  *Cf.* Mot. at 9 ("the ROK makes no

allegations that Clyde & Co. was served while present in this district, or that Clyde & Co.

maintains systematic or continuous local activities in the district … .").

As a preliminary matter, Kazakhstan notes that the Stati Parties do not have standing to

raise this objection.  The Subpoena was duly served on Clyde & Co. LLP by serving one of its

partner that works in its New York office.  Clyde & Co. LLP has raised no objection to service,

and certainly has not asserted that is not "found" in the Southern District of New York.  Nor

could it given that each of its New York partners is a partner of Clyde & Co. LLP.  The Stati

Parties' argument – which as no evidentiary foundation other than their misinterpretation of various materials it found on the Internet – should therefore be summarily rejected.

Turning to the details, as the Stati Parties recognize in the Motion, "found" encompasses traditional notions of personal jurisdiction.  *See* Mot. at 8-10; *see*, *e.g.*, *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002).  Thus, a party is "found" for purposes of § 1782 if, *inter alia*, that party has "continuous and systematic" contacts with the forum sufficient to subject that party to personal jurisdiction in the forum.  *See In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).  Similarly, under New York law, a foreign entity will be subject to general personal jurisdiction in New York if it engages in "continuous and systematic" contacts in the jurisdiction.  *See First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 361-62 (S.D.N.Y. 1997), *on reconsideration in part*, 1998 WL 148421 (S.D.N.Y. Mar. 27, 1998), *and aff'd*, 154 F.3d 16 (2d Cir. 1998) ("*Price Waterhouse*") (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41 (1967)).[3]

Here, it is undisputed that the New York-based partners of Clyde & Co. are partners of Clyde & Co. LLP.  *See* Letter from Clyde & Co. to King & Spalding LLP (4-9-2015), ECF 9-4, ¶ 4 ("[A]ll partners/members in Clyde & Co. US LLP are also partners/members in the Clyde & Co LLP.").  Accordingly, Clyde & Co. LLP has the requisite "continuous and systematic" contacts through its ongoing business operations in this jurisdiction, i.e., the daily practice of law of its partners in this jurisdiction.

Moreover, under well-settled law in the Second Circuit, "i[f] valid service is effected on one partner within the state, personal jurisdiction over the partnership is achieved."  *Price*

---

[3] *See also Brenner v. Sheraton Waikiki Hotel & Resort,*  2011 WL 4948826, at *1-5 (Nassau Co. Sup. Ct. 2011), *reversed in part on other grounds on reargument*, 964 N.Y.S.2d 57 (Nassau Co. Sup. Ct. 2012) (finding personal jurisdiction over a partnership based on the continuous and systematic contacts of another entity acting on the partnership's behalf).

*Waterhouse*, 154 F.3d at 19 (applying N.Y. C.P.L.R. Section 310(a)).  On April 1, 2015, Kazakhstan served the Subpoena on Michael Knoerzer, the managing partner of the Clyde & Co. New York office.  Because the Subpoena was properly served upon a partner of Clyde & Co. LLP in New York City, service was effective on Clyde & Co. LLP.

The facts of *Price Waterhouse* are instructive.  There, a plaintiff served a subpoena on Price Waterhouse US (PW-US) seeking discovery of, *inter alia*, documents held by Price Waterhouse UK (PW-UK)—a separate partnership.  154 F.3d at 17-19.  The plaintiff also served the subpoena on a PW-UK partner who was working in PW-US's New York office.  *Id.* at 18. The Second Circuit held that service of process was effective as to PW-UK, because the subpoena was validly served on a partner of PW-UK.  *Id.* at 18-19.  Therefore, the Second Circuit affirmed the district court's exercise of jurisdiction over PW-UK.  *Id.* at 19.  ("Mr. Newton was a partner in PW-UK in August 1997.  … Mr. Newton was served by hand in New York at that time.  These facts suffice to confer personal jurisdiction over PW-UK.").  Applying this holding to the present case, with partners in Clyde & Co.'s New York office being partners in Clyde & Co. LLP, and service of process being accepted by a partner of Clyde & Co. LLP, Clyde & Co. LLP is "found" in the Southern District of New York.[4]

### B.    Kazakhstan Is An "Interested Person" Within The Meaning Of § 1782

The Stati Parties incorrectly argue that Kazakhstan – ***the party seeking discovery*** – is not an "interested person" for purposes of § 1782, because Kazakhstan is a sovereign state.  *See* Mot. at 6-8.  This argument is contrary to case law, the purpose and legislative history of § 1782, and

---

[4] *Cf. In re Godfrey*, 526 F. Supp. 2d at 421-22 (no indication that individuals were "found" in the Southern District of New York where individuals ***were not personally served***; with respect to one individual, service was left with someone who purported to be authorized to accept service, but was not, and with respect to the second individual, service was left with his mother at her home); *In re Microsoft*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) (Clearly Gottlieb partner who was a Dutch national, worked and resided in Brussels, and ***was not personally served in the Southern District of New York*** was not "found" there).

the litigation positions that the Stati Parties themselves have taken in the other § 1782

proceedings in which they are seeking to obtain discovery of Kazakhstan's banking information.

### 1. Courts Have Held that Sovereign States Can Utilize § 1782 to Obtain Discovery

The Stati Parties claim that Kazakhstan is not an "interested person" who can obtain

discovery under § 1782 on the basis of three cases that address a factually inapposite scenario:

whether a district court can order § 1782 discovery *against* a sovereign state.  *See* Mot. at 6-8

(citing *Al Fayed v. CIA*, 229 F.3d 272 (D.C. Cir. 2010) (United States); *Thai-Lao Lignite*

*(Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 2012 WL 966042 (S.D.N.Y.

Mar. 20, 2012) (Laos); and *McKevitt v. Mueller*, 689 F. Supp. 2d 661 (S.D.N.Y. 2010) (United

States)).  In each of these cases, where the petitioner sought discovery *against* a sovereign, the

court concluded that a sovereign state is not a "person" for purposes of § 1782.  But, as the Stati

Parties acknowledge, *see* Mot. at 8, none of these cases address whether a sovereign may be an

"interested person" for the purpose of *utilizing* § 1782 to obtain discovery.

By contrast, the courts that have addressed the factual scenario that is at issue here have

uniformly held that a sovereign, such as Kazakhstan, can utilize § 1782 to obtain discovery.  *See*

*In re Republic of Ecuador,* 2011 WL 4434816, at *2 (N.D. Cal. Sept. 23, 2011); *In re Republic*

*of Ecuador*, 2010 WL 4973492, at *2-6 (N.D. Cal. Dec. 1, 2010).  Conspicuously, the Stati

Parties' Motion does not mention these cases.

In *In re Ecuador*, 2010 WL 4973492, the court expressly held that sovereign states *are*

"interested person(s)" that can use § 1782 to seek discovery.  2010 WL 4973492, at *1, *3.  In

coming to this holding, the court relied on an extensive discussion of the legislative history,

context, interpretative case law and policy underlying § 1782.  *Id*. at *2-6.  Similarly, in a 2011

decision, the same district court held that the Republic of Ecuador was an "interested person"

that could seek discovery pursuant to § 1782.  This decision relied on the Supreme Court's broad

interpretation of the term "interested person" in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542

U.S. 241, 254 (2004).  *See In re Ecuador*, 2011 WL 4434816, at *2.  In *Intel*, the Court held

"***litigants*** are included among, and may be the most common example of the 'interest person[s]'

who may invoke § 1782."  542 U.S. at 256 (emphasis added).  Because the Republic of Ecuador

was a respondent in an international arbitration proceeding, the Northern District of California

concluded that it was a "litigant" and therefore an "interested person" that could utilize § 1782 to

seek discovery.[5]  *See* 2011 WL 4434816, at *2.

   The *Ecuador* cases are directly on point and Kazakhstan submits that their well-reasoned

holdings should be adopted here.  Kazakhstan is a respondent in an international arbitration

proceeding, and is a "litigant" seeking to invoke § 1782.  Therefore, it is an "interested person."

As further set forth below, this conclusion is supported by the purpose and legislative history of

§ 1782.

    **2.**  **The Purpose and Legislative History of § 1782 Supports the Conclusion that a Sovereign State is an "Interested Person" That Can Utilize § 1782 to Obtain Discovery**

   The Stati Parties' Motion does not discuss, or even reference, the purpose and legislative

history of § 1782.  This is an error given that the legislative history of § 1782 is critical to

---

[5] Further, both of the *Ecuador* courts recognized that the question of whether a sovereign state is an "interested person" for purposes of § 1782 becomes irrelevant when a governmental official acting on behalf of the sovereign makes the § 1782 request.  As noted by Judge Chen, "many cases [] have afforded assistance to foreign governments under § 1782 where the request was made by a government official acting on behalf of the sovereign."  2010 WL 4973492, at *5. *See also In re Ecuador,* 2011 WL 4434816, at *1, *2 (noting that the Republic of Ecuador's legal representative, the Attorney General, also was an applicant for the requested discovery).  Judge Chen further reasoned that if "an official with authority may seek assistance under § 1782 on the sovereign's behalf, it makes no logical sense to hold the sovereign may not do so on its own behalf."  2010 WL 4973492, at *5.

understanding why a sovereign state, such as Kazakhstan, is an "interested person" under the statute for the purpose of utilizing the statute to obtain discovery.

The term "person" appearing in a statute is generally not interpreted to encompass a sovereign state. *See Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 82-83 (1991). However, as noted in the first *Ecuador* decision, there is no "'hard and fast rule of exclusion'" that prohibits the term "person" from encompassing a sovereign. 2010 WL 4973492, at *2 (quoting *Vt. Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 781 (2000)). Courts may interpret the term "person" to encompass sovereigns "if '[t]he purpose, the subject matter, the context, the legislative history, [or] the executive interpretation of the statute . . . indicate an intent, by the use of the term, to bring state or nation within the scope of the law.'"[6] *Int'l Primate*, 500 U.S. at 83 (quoting *United States v. Cooper Corp.*, 312 U.S. 600, 605 (1941)). These considerations demonstrate that Congress intended to permit sovereigns to utilize the discovery mechanisms of § 1782.

First, the purpose § 1782, evidenced by its legislative history, demonstrates that the phrase "any interested person" encompasses a sovereign. Congress enacted the first "version" of § 1782 in the mid-19th century. The statutes at that time granted foreign governments limited access to discovery in federal courts; specifically, these statutes allowed such discovery in cases where a "foreign country shall be a party or shall have an interest" in litigation pending in that foreign country's courts. *See In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada*, 523 F.2d 562, 566-68 (6th Cir. 1975) (reproducing statutes). Amendments leading up

---

[6] Courts analyzing these factors have interpreted the term "person" appearing in other federal statutes to include a sovereign. *See, e.g.*, *Nardone v. United States*, 302 U.S. 379, 383-84 (1937) (holding that the United States was a "person" within the meaning of the wiretap law); *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) (determining that "person" within Rule 45(a) includes the United States).

to enactment of the current language of § 1782 were consistently in the direction "of increasingly broad applicability." *Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993).[7]

In 1964, Congress enacted the current version of § 1782.  *See* Pub. L. No. 88-619, 78 Stat. 995, 997 (1964).  "The primary intent of the amendments was to 'clarif[y] and liberalize [ ] existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States.'"  *Gianoli*, 3 F.3d at 57 (quoting S. Rep. No. 88-1580 at 7, *reprinted in* 1964 U.S.C.C.A.N. 3782).  As the Senate Report to the 1964 amendments noted, the goal of § 1782 was to "bring[] the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects."  S. Rep. No. 88-1580, at 2, *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783 (hereafter "Senate Report").

Through the 1964 amendments, Congress also sought to "prompt foreign [countries] to follow our generous example and provide similar assistance to our court systems." *Application of Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992).  To fulfill this objective, Congress sought to, *inter alia*, expand the category of parties permitted to avail themselves of foreign discovery mechanisms in federal courts.  In particular, Congress inserted the phrase "any interested person" to ensure that § 1782 discovery would be available to **every** category of litigant involved in international litigation.  The legislative history plainly evidences this purpose, indicating that the phrase "any interested person" was intended to encompass a "person designated by or under a foreign law, **_or a party to_** the foreign or international litigation."  Senate

---

[7] *See also Vt. Agency*, 529 U.S. at 781-82 (reviewing historical development of the False Claims Act to interpret the term "person"); *Int'l Primate*, 500 U.S. at 83-84 (reviewing historical record to determine whether NIH qualified as "person" within 28 U.S.C. § 1442(a))).

Report, at 8 (emphasis added).  Importantly, there is no evidence whatsoever that Congress intended to *exclude* sovereign states.

The legislative history also reveals that § 1782 was enacted to grant litigants *of all kinds* broad and expansive access to foreign discovery through the federal courts.  Interpreting "person" within the phrase "any interested person" to encompass a sovereign state is therefore wholly consistent with § 1782's purpose.  First, sovereign states—like the Republic of Kazakhstan—are routinely involved in litigation all around the world.  It is hardly consistent with § 1782's purpose of liberalizing and expanding access to foreign discovery to exclude an entire class of litigants.  Indeed, it would be illogical to interpret the phrase "any interested person" to categorically exclude sovereigns when the prior, *restrictive* versions of the statute— that were discarded by Congress through the 1964 amendments—*expressly allowed* certain sovereigns to utilize the federal courts in aid of foreign discovery.  *See Montreal, Canada*, 523 F.2d at 564 n.5, 566-68 (reproducing prior versions of § 1782).

Second, § 1782's purposes of (1) "prompt[ing] foreign [countries] to follow our generous example and provide similar assistance to our court systems," and (2) "providing equitable and efficacious procedures," for foreign discovery, *Hungarian Airlines*, 964 F.2d at 99-100; Senate Report at 2, would be subverted by an interpretation of "any interested person" that did not include sovereigns.  Specifically, it would have been irrational for Congress to have attempted to motivate foreign nations to "follow our generous example," *cf. Hungarian Airlines*, 964 F.2d at 99-100, if that example would have guided other countries to enact discovery mechanisms that would be wholly unavailable to the United States as a litigant.  Nor could Congress have rationally expected foreign countries to view §1782 as a model if (1) § 1782's "generosity" was not being extended to those countries, but was being extended to litigants seeking to use § 1782

*against* those sovereigns; or (2) if a foreign country—by enacting a parallel statute—would be barring itself from utilizing its own discovery mechanisms.

The Stati Parties' interpretation therefore, in addition to be at odds with existing precedent, would create severe inequities, which should not be credited to the Congress that sought to enact "*equitable* and efficacious procedures," for obtaining foreign discovery in federal court. *See* Senate Report, at 2 (emphasis added). Such inequities are amply demonstrated by the Stati Parties' own conduct, i.e., their use, of § 1782 to have this Court issue *three* ex parte orders commanding the third-parties to produce Kazakhstan's banking information. *See* No. 14-mc-00425-VSB (S.D.N.Y.); No. 1:15-mc-00051-P1 (S.D.N.Y.); No. 1:15-mc-00052-P1 (S.D.N.Y.). Yet, on the other hand, the Stati Parties would have this Court accept the proposition that Kazakhstan is not a "person" for the purpose of using § 1782 to obtain its own discovery. As the court in the 2010 *Ecuador* decision reasoned, such "asymmetrical result[s] prejudicial to foreign governments is hardly conducive to encouraging cooperation and reciprocal treatment of the United States in the international arena[.]" *See Republic of Ecuador*, 2010 WL 4973492, at *6.

Indeed, the Stati Parties have it exactly backwards when they argue that the term "person" must be interpreted uniformly throughout § 1782, *see* Mot. at 8, in that they ignore the differing contextual considerations implicated when a sovereign is the *target* of a court order compelling discovery, as opposed to when a sovereign is the party *seeking* discovery from a non-sovereign entity through § 1782. "Person" has generally not been found to include "sovereigns" when such an interpretation "would deprive the sovereign of a recognized or established prerogative, title or interest[.]" *Yousuf*, 451 F.3d at 254 (citing *Nardone*, 302 U.S. at 383). Considerations of sovereign immunity thus are implicated when a sovereign is the subject of discovery, not when the sovereign is the party seeking discovery. *See Al Fayed*, 299 F.3d 274.

14

In concluding that sovereigns are not "persons" **subject to** § 1782 discovery, the D.C. Circuit in

*Al Fayed* acknowledged this distinction and relied, in part, on it in support of its interpretation

excluding sovereigns from the class of "persons" **subject to** § 1782 discovery.  *See id*. at 274-

75.[8]

For these reasons, the purpose, legislative history, and contextual considerations

concerning § 1782 demonstrate why sovereigns **are** "interested persons" capable of utilizing

§ 1782 to obtain discovery.  Accordingly, the Petition satisfies all three statutory requirements of

§ 1782.

## II.    **The *Intel* Factors Weigh In Favor Of The Court's Order Granting the Petition**

The discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542

U.S. 241 (2004), weigh in favor of granting the Petition.  The factors are:

> (1) whether the person from whom discovery is sought is a participant in the
> foreign proceeding—if so, then there is less reason to grant the § 1782 petition;
> (2) the nature of the foreign tribunal, the character of the proceedings underway
> abroad, and the receptivity of the foreign government or the court or agency
> abroad to U.S. federal-court judicial assistance; (3) whether § 1782 discovery
> conceals an attempt to circumvent foreign proof-gathering restrictions or other
> policies of a foreign country or the United States; and (4) whether § 1782
> discovery would be unduly intrusive or burdensome.

*Id*. at 264-65.  The *Intel* factors are useful guideposts to a district court in exercising its

discretion to grant or deny a § 1782 petition in light of the twin aims of § 1782: "[1] providing

---

[8] The well-established cannon of construction that statutes providing extensive, detailed
regulation over a subject are to control over general statutory language also justifies interpreting
"person" differently depending on whether the sovereign is the party targeted by § 1782
discovery.  *See*, *e.g.*, *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) ("[I]t is a basic
principle of statutory construction that a specific statute . . . controls over a general
provision[.]").  As noted, interpreting "person" in § 1782 to authorize discovery against a
sovereign would implicate sovereign immunity concerns.  But foreign sovereign immunity and
its exceptions are subjects that have been extensively addressed by Congress in the Foreign
Sovereign Immunities Act ("FSIA")—which does not include a "foreign discovery" exception.
*See* 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-11.  Thus, interpreting § 1782 to have
modified or carved out an exception **beyond** those specified in the FSIA runs afoul of this basic
principle of statutory construction.

efficient means of assistance to participants in international litigation in our federal courts and [2] encouraging foreign countries by example to provide similar means of assistance to our courts[.]"  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (citing *Hungarian Airlines*, 964 F.2d at 100).

Here, the Stati Parties make no challenge to the fourth *Intel* factor, that the § 1782 discovery would be unduly intrusive or burdensome.  Nor would they have standing to do so. The Subpoena seeks three discrete categories of documents from Clyde & Co.  Thus, only the first three *Intel* factors are at issue.

First, the Stati Parties argue that Kazakhstan's § 1782 application is "an attempt to circumvent the Swedish court's foreign proof-gathering restrictions and policies." Mot. at 12-13. The Stati Parties claim that Kazakhstan was required to ask the Swedish Court to compel the production of the documents Kazakhstan now seeks from Ascom Group, S.A. ("Ascom"), because Ascom is a party to the Swedish Proceeding and the Swedish Court has jurisdiction over Ascom.  *Id.* at 13  The Stati Parties do not cite any authority to support this argument.

The fact that ***somebody*** in possession of the desired information is "within reach" of the foreign tribunal's jurisdiction is ***not*** one of the discretionary factors under *Intel*.  *See Intel*, 542 U.S. at 264.  Rather, the plain language of *Intel* states that the first discretionary factor is relevant where the "person ***from whom discovery is sought*** is a participant in the foreign proceeding[.]" *Intel*, 542 U.S. at 264 (emphasis added).  Here, the person from whom discovery is sought – Clyde & Co. – is not a participant in the Swedish Proceeding.[9]

---

[9] Some courts in the Southern District of New York have held that district courts should "focus" on "the foreign tribunal's ability to control the evidence and order production, and not the nominal target of the § 1782 application."  *In re Application of OOO Promnefstroy*, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) (citing case law).   However, at least one court in this district has reached the contrary conclusion.  *See In re Application of Gemeinshcaftspraxis Dr.*

Further, the Second Circuit, in accord with *Intel*, has expressly held that § 1782 ***does not*** require a party to first request discovery from the foreign tribunal before pursuing discovery under § 1782.  *See Hungarian Airlines*, 964 F.2d at 100-01 (concluding that § 1782 does not "requir[e] an interested person first to seek discovery from the foreign or international tribunal" and rejecting an interpretation of § 1782 "which would impose a quasi-exhaustion requirement"). This confirms that, contrary to the position of the Stati Parties, Kazakhstan was not required to first request discovery from Ascom in the Swedish Proceeding.  *Cf. Aventis Pharma v. Wyeth*, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) (cited by the Stati Parties) (the party against whom the § 1782 discovery was directed ***was*** a party to the foreign proceeding).

Second, the Stati Parties argue, ostensibly based on *Intel*'s ***second*** prong, that discovery by § 1782 is inappropriate in light of the "character" of the Swedish Proceeding.  *See* Mot. at 11-12.  According to the Stati Parties, the subpoenaed documents "have absolutely no relevance to [Kazakhstan's] claims" in the Swedish proceeding, and therefore "[it is] highly unlikely that the Swedish court would compel the production of the documents sought" by Kazakhstan.  *See id.* at 12.  Thus, in essence, the Stati Parties argue that this Court should have denied § 1782 discovery because the discovery would not have been authorized if requested from the foreign tribunal.

This argument is simply incorrect.  As set forth in the attached Declaration of Hans Bagner, the information sought is relevant to the present claims and defenses in the Swedish Proceeding.  Kazakhstan is challenging the SCC Award, in part, on the basis of the argument that the Tribunal improperly valued the LPG plant.  Bagner Decl. ¶ 13.  Upon information and belief, the requested documents will demonstrate that the Stati Parties have taken inconsistent positions

---

*Med. Schottdorf*, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) (finding that Intel's first prong "weigh[ed] decisively in [petitioner's] favor" because the target of discovery was not a party to the foreign proceeding).

regarding the valuation of the LPG Plant in the SCC Arbitration and in other proceedings where the Stati Parties would have been incentivized to present a contrary valuation.  *Id.*  Moreover, if the requested documents contain what it suspected, the documents will show behavior by the Stati Parties that is contrary to Swedish public policy.  *Id.* ¶¶ 14, 16.  Under Swedish law, an arbitral award based on falsified evidence is manifestly incompatible with Swedish public policy, and therefore subject to invalidation.  *Id.* ¶ 16.  Thus, the requested documents both relate to Kazakhstan's existing claims in the Swedish Proceeding, and also could give rise to an additional claim requesting invalidation, or partial invalidation, of the Award.  *Id*. ¶¶ 13-18.  The second *Intel* factor thus weighs in ***favor*** of granting the Petition.

Putting the relevance of the subpoenaed documents aside, the Stati Parties' argument would fail because the Supreme Court and the Second Circuit have expressly rejected a "foreign discoverability" requirement when analyzing *Intel*'s third prong.  In *Intel*, the Supreme Court made it abundantly clear that "***nothing in the text of § 1782 limits*** a district court's production-order authority to materials that could be discovered in the foreign jurisdiction  … ."  542 U.S. at 260 (emphasis added).  The Second Circuit has faithfully applied this principle.  *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998) ("[T]he district court need not satisfy itself that the discovery sought in the petition is of information that would be discoverable under the laws of the foreign jurisdiction in which the proceeding is pending."); *Schmitz*, 376 F.3d at 84 ("[T]here is no requirement under § 1782 that the type of discovery sought be available in the relevant foreign jurisdiction  … .").  Thus, district courts in this Circuit have routinely exercised their discretion to permit use of § 1782 even where there is a possibility that the discovery sought would not be authorized by the foreign tribunal.  *See*, *e.g.*, *In re Gushlak,*, 2011 WL 3651268, at *5 (E.D.N.Y. Aug. 17, 2011) ("However, the possibility that the Grand Court will rule on

discovery requests similar to the ones at issue here does not weigh against granting Petitioner's application."), *aff'd sub nom. Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012); *In re Application of Gorsoan*, 2014 WL 7232262, at *9 (finding *Intel*'s third factor to weigh in favor of discovery even where there was potential for different ruling in foreign proceeding).  Indeed, even where § 1782 is used as a "last resort to acquire discovery that [a party] was unable to obtain abroad," *Intel*'s third factor has been held to weigh in favor of granting discovery.  *See Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *7.  Use of § 1782 in this regard is "precisely the type of assistance that the statute was designed to afford."  *Id.*

Further, district courts have found *Intel*'s third prong to weigh in favor of discovery *unless* some *express directive* of a foreign tribunal was being violated.  *See, e.g.*, *OOO Promnefstroy*, 2009 WL 3335608, at *8 (finding the third *Intel* factor to weigh heavily against § 1782 discovery where "the record [was] replete with instances in which the Dutch courts rejected Promnefstroy's attempts to procure the same information it seeks through its § 1782 application"); *In re Microsoft Corp.*, 428 F. Supp. 2d at 195 (finding the third *Intel* factor to weigh heavily against § 1782 discovery where the foreign tribunal "itself recognized that Microsoft's subpoenas are not objectively necessary but rather an attempt to circumvent the established rules on access to file in proceedings before the Commission") (internal quotation marks omitted); *see also Gemeinshcaftspraxis*, 2006 WL 3844464, at *7 ("Absent any indication of bad faith on Schottdorf's part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor.").  Here, no such directive in the Swedish Proceeding exists.

Further, the Stati Parties' argument that the "character" of the Swedish Proceeding counsels in favor of granting the Motion fails for the same reasons.[10]  *See* Mot. at 11-12. Though a court may look to the "nature, attitude and procedures" of the foreign tribunal to inform the exercise of discretion, *see Schmitz*, 376 F.3d at 84, the Second Circuit has held that "a district court's inquiry into the discoverability of requested materials ***should consider only authoritative proof*** that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added).  The Second Circuit expressly reached this conclusion to avoid the "battle-by-affidavit" scenario that would result when district courts engage in "speculative forays into legal territories unfamiliar to federal judges."  *Id.* at 1099-1100.  Such speculative forays are wholly unnecessary as foreign tribunals are competent to "protect [themselves] from the effects of any discovery order . . . that inadvertently offend[] [that tribunal.]"  *Id.* at 1101.  Thus, absent a "clear directive," such as "proof[] embodied in a forum country's judicial, executive, or legislative declarations ***that specifically address*** the use of evidence gathered under foreign procedures," district courts are not to entertain the parties' speculation into what a foreign court would deem offensive or unacceptable.  *See id.* at 1100.

Despite this clear authority, the Stati Parties fail to cite to a ***single case*** supporting its argument that the "character" of the Swedish Proceeding militates against § 1782 discovery.  *See* Mot. at 11-12.  They offer only speculation about how Kazakhstan intends to use the subpoenaed documents, and offer their "opinion" as to how the Swedish court ***might*** have ruled on such discovery requests.  The Stati Parties point to no express prohibition or comparable authoritative

---

[10] The inquiries under *Intel*'s second and third prongs are closely related.  As such, the Second Circuit's aversion toward "speculative forays" and "battles-by-affidavit" is equally applicable to consideration of both prongs.

proof from the foreign tribunal that could tip *Intel*'s second (or third) discretionary factor against granting the Petition.  Nor do the Stati Parties point to any other characteristic of the foreign proceedings that would support this argument.  Ultimately, the Stati Parties' argument is nothing more than an invitation for this Court to engage in a "speculative foray" through a "battle-by-affidavit" into how the Swedish court ***might*** view a discovery request that was never made, and was not required to have been made.  This is exactly what the case law counsels against, and it should be rejected.

**CONCLUSION**

For the reasons set forth above, the Petition satisfies the three requirements of 28 U.S.C. § 1782, and the discretionary *Intel* factors were properly weighed by the Court in granting the Petition.  Accordingly, Kazakhstan respectfully requests that the Court deny the Stati Parties' Motion.

Dated:  April 21, 2015

Respectfully submitted,

/s/ Felice B. Galant
Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
666 Fifth Avenue
New York, New York 10103
Tel.: (212) 318-3000
Fax: (212) 318-3400
felice.galant@nortonrosefulbright.com

*Attorneys for Republic of Kazakhstan*

OF COUNSEL:

Matthew H. Kirtland
matthew.kirtland@nortonrosefulbright.com
Kara L. Petteway
kara.petteway@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
801 Pennsylvania Avenue, NW
Washington, D.C. 20004-2623
Tel.:  (202) 662-0200
Fax:  (202) 662-4643

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————

|  |  |
|---|---|
| **IN RE APPLICATION OF REPUBLIC OF KAZAKHSTAN FOR AN ORDER DIRECTING DISCOVERY FROM CLYDE & CO. LLP PURSUANT TO 28 U.S.C. § 1782.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   **Civil Action No. 15-mc-00081 (P1)** |

————————————————————

**[PROPOSED] ORDER**

Upon consideration of the Motion to Intervene, Motion to Vacate, Order Permitting

Discovery Pursuant to 28 U.S.C. § 1782, and Motion to Quash Subpoena (the "Motion"), the

Republic of Kazakhstan's Opposition thereto, and the entire record in this matter, it is this

_____ day of April, 2015 hereby **ORDERED** that the Motion is **DENIED**.


**IT IS SO ORDERED.**


_____
UNITED STATES DISTRICT JUDGE

1