UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE APPLICATION OF REPUBLIC OF KAZAKHSTAN FOR AN ORDER DIRECTING DISCOVERY FROM CLYDE & CO. LLP PURSUANT TO 28 U.S.C. § 1782 ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 15-mc-00081-P1 |

## DECLARATION OF MATTHEW KIRTLAND

I, Matthew Kirtland, declare as follows:

1. My name is Matthew Kirtland. I am over the age of eighteen (18), and I make this true and correct declaration from personal knowledge.

2. I am a partner in the Washington, D.C. office of Norton Rose Fulbright US LLP ("Norton Rose Fulbright"). I represent the Republic of Kazakhstan ("Kazakhstan" or "Petitioner") in connection with the above-referenced proceeding.

3. I have reviewed the Memorandum of Law in Support of Motion to Intervene, Motion to Vacate Order Permitting Discovery Pursuant to 28 U.S.C. § 1782, and Motion to Quash Subpoena ("the Motion") filed by Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding (the "Stati Parties"), and the Declarations of Charlene C. Sun and Bo G.H. Nilsson filed therewith.

4. The Stati Parties instituted arbitration proceedings against Petitioner under the Arbitration Rules of the Stockholm Chamber of Commerce (the "SCC Arbitration"), purportedly

pursuant to the terms of the Energy Charter Treaty, I.E.L. III-0068, Dec. 17, 1994 (the "ECT"), to which Kazakhstan is a member.

5.   The SCC Arbitration concerned various oil and gas assets operated by the Stati Parties within Kazakhstan. During the arbitration, the Stati Parties demanded compensation for the alleged expropriation by Petitioner of certain of such assets. One of the assets for which the Stati Parties sought compensation was a liquefied petroleum gas plant (the "LPG Plant"). In support of this claim, the Stati Parties submitted evidence and argument concerning three other companies: Vitol S.A. ("Vitol"), Tolkynneftegas LLP ("TNG"), and Montvale Invest Ltd. ("Montvale"). TNG and Montvale are affiliates of the Stati Parties.

6.   On December 19, 2013, an award was issued in the SCC Arbitration in favor of the Stati Parties (the "SCC Award") by the arbitral tribunal (the "Tribunal"). The Tribunal consisted of three members, none of whom were appointed by Kazakhstan. The Stati Parties were able to obtain a ruling against Kazakhstan for nearly $500 million dollars ($497,685,101.00), plus interest and costs.

7.   As part of the SCC Award, the Tribunal relied on various allegations by the Stati Parties to award them $199 million in compensation for the alleged expropriation of the LPG Plant.

8.   In March 2014, Kazakhstan initiated proceedings before the Svea Court of Appeal in Stockholm, Sweden (the "Swedish Proceeding") to set aside the SCC Award under the Swedish Arbitration Act (the "SAA"), contending that the facts and circumstances giving rise to the SCC Award constitute egregious violations of the provisions of the ECT, the arbitration rules of the SCC, and Kazakhstan's due process rights.

9. Specifically, Petitioner has asserted in the Swedish Proceeding, *inter alia*, that: (1) the Tribunal violated fundamental principles of Swedish law by depriving Petitioner of its right to appoint its own arbitrator on its behalf; (2) no agreement to arbitrate existed because the Stati Parties did not comply with the jurisdictional three month cooling-off period specified in the ECT; and (3) the Tribunal's $199 million valuation of the LPG Plant was so erroneous as to render that portion of the award subject to set aside, and, more specifically, that the LPG Plant should have been valued as scrap.

10. The Stati Parties are concurrently attempting to enforce the SCC Award internationally. One of those actions has been filed in the United States District Court for the District of Columbia, which Kazakhstan has opposed. In the D.C. action, Kazakhstan is arguing, *inter alia*, that the SCC Award is unenforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517 (the "New York Convention") because (1) no valid arbitration agreement existed between the parties; (2) Kazakhstan was not given proper notice of the appointment of the arbitrator; (3) the composition of the arbitral authority and the arbitration procedure were not in accordance with the purported agreement of the parties to arbitrate; and (4) the recognition and enforcement of the SCC Award would be contrary to the public policy of the United States. This action is currently pending.

11. After the filing of the Swedish Proceeding, Kazakhstan became aware of three (3) other arbitration proceedings involving the LPG Plant that involved certain of the Stati Parties and/or their affiliates.

12. The first proceeding is between Vitol, Arkham SA and Montvale. The second proceeding is between Vitol, Arkham SA and TNG. The third proceeding is between Ascom and

Vitol FSU B.V. The first proceeding resulted in an arbitral award dated April 16, 2012, of which Petitioner has recently obtained a copy. The second proceeding resulted in an arbitral award dated May 10, 2012, of which Petitioner has not been able to obtain a copy. The third arbitration remains pending.

13. The valuation of the LPG Plant was at issue in the above-referenced other arbitrations. Upon information and belief, the Stati Parties made representations in one or more of these other arbitrations concerning the valuation of the LPG Plant that contradict the representations the Stati Parties made in the SCC Arbitration, and that were relied upon by the Tribunal in issuing the SCC Award against Kazakhstan and valuing the LPG Plant at $199 million.

14. Kazakhstan is aware of three (3) pending § 1782 actions where the Stati Parties have, on an *ex parte* basis,[1] obtained orders from this Court authorizing it to issue subpoenas to third-party financial institutions commanding the production of Kazakhstan's banking information. *See* No. 14-mc-00425-VSB (S.D.N.Y.) (filed 12-22-14) (seeking discovery from Bank of New York Mellon Corporation); No. 1:15-mc-00051-P1 (S.D.N.Y.) (filed 2-26-15) (seeking discovery from BNP Paribas Asset Management, Inc. and Fischer, Francis, Trees & Watts, Inc.); No. 1:15-mc-00052-P1 (filed 2-26-15) (seeking discovery from ABN Amro Holdings USA LLC). The Stati Parties also filed a § 1782 petition in the United States District Court for the District of Massachusetts, but that petition has not yet been granted.

15. On March 27, 2015, Kazakhstan instituted the instant proceeding to seek the production of documents relevant to its challenge of the SCC Award in the Swedish Proceeding.

---

[1] Petitions under 28 U.S.C. § 1782 are properly filed ex parte.

4

16. The Petition seeks three discrete categories of documents: (1) any orders or rulings that concern the LPG Plant; (2) any transcripts that contain testimony relating to the LPG Plant; and (3) any pleadings, submissions or witness evidence that relate to the LPG Plant.

17. This Court granted the Petition on March 30, 2015, authorizing Kazakhstan to serve a subpoena (the "Subpoena") on Clyde & Co. LLP ("Clyde & Co."). Clyde & Co. is the law firm representing Vitol/Vitol FSU B.V. and Arkham SA in all three of the Prior Arbitrations.

18. The New York office of Clyde & Co. is located within the Southern District of New York at 405 Lexington Ave, New York, NY 10174.

19. Kazakhstan served Clyde & Co. on April 1, 2015 by serving the managing partner of its New York office – Mr. Michael Knoerzer. Mr. Knoerzer designated an associate in his office – Mr. Gregory Hoffnagle – to accept service on his behalf.

20. All partners in the New York office of Clyde & Co. are partners in "Clyde & Co. LLP" – the entity being served with the Subpoena.

21. Clyde & Co. has not asserted any objections to service of the Subpoena or to the scope of documents that it requests. Based on communications between counsel, Clyde & Co., is prepared to produce the requested documents upon resolution of the objections filed by the Stati Parties.

22. The compliance date for the Subpoena is April 10, 2015. Stati Parties filed their Motion that day.

5

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 21, 2015.

_Matthew H. Kirtland/ kep_
Matthew H. Kirtland