*4.5.*     *Thereafter, no new evidence may be submitted regarding jurisdiction and liability, unless agreed between the Parties or expressly authorized by the Tribunal.*

*4.6.*     ***By 3 August 2012**, the Parties submit*

\*     *notifications of the witnesses and experts presented by themselves or by the other Party they wish to examine at the Hearing on jurisdiction and liability including any information which witness or expert cannot testify in English,*

\*     *and an updated list of all exhibits regarding jurisdiction and liability with indications where the respective documents can be found in the file and an electronic version on a CD or USBB-device of that list hyperlinked to the exhibits.*

*4.7.*     ***By 10 August 2012**, a Party may amend its notification of witnesses and experts, if it considers that necessary in view of the notification received from the other Party.*

*4.8.*     *Thereafter, the Tribunal will send the Parties a draft of a Procedural Order regarding further details of the Hearing inviting comments from the Parties.*

*4.9.*     ***Within 3 weeks later**, at a date set by the Tribunal after consultation of the Parties, a Pre-Hearing Conference by telephone between the Parties and the Tribunal may be held, if considered necessary by the Tribunal.*

*4.10.*     *As soon as possible thereafter, Tribunal will issue a Procedural Order regarding details of the Hearing on jurisdiction and liability.*

*4.11.*     ***Hearing from 1 to 5 October 2012**, and, if found necessary by the Tribunal after consultation with the Parties, extended to continue from **8 to 9 October 2012**.*

*4.12.*     *Towards the end of the Hearing, the Tribunal will consult with the Parties regarding the further procedure up to the hearing on quantum.*

*4.13.*     *Subject to any changes resulting from the discussion at the above hearing in October, **by 21 November 2012**, Respondent's Rejoinder on quantum.*

*4.14.*     *Dates for a period of up to 4 days for the **hearing on quantum** will be determined after further exchanges between the Tribunal and the Parties as soon as possible.*

**5.**     **Logistics at the Hearing**



> *5.1.    The Tribunal recalls regarding the logistics at the Hearing:*
>
> \*        *Section 10.6 of PO-1 (transcript)*
> \*        *Section 10.7 of PO-1 (interpretation)*
> \*        *the Chairman's mail of 4 April to the ICC Hearing Centre in Paris,*
> *which was copied to the Parties (arrangements and billing at the*
> *Centre).*
>
> *5.2.    The Parties are invited to jointly make the necessary arrangements*
> *and inform the Tribunal accordingly by 26 July 2012.*

65.   On **7 May 2012**, Claimants notified the Tribunal that it required an extension until 14:00 CET on 8 May in order to make its submission, due to the size of the submission, as well as lingering issues of obtaining signatures and translations across various jurisdictions.

66.   On **8 May 2012**, Claimants submitted **Claimants' Reply Memorial on Jurisdiction and Liability** (C-II), together with 7 witness statements and 5 expert reports, to the Tribunal.

67.   On **9 May 2012**, the Arbitration Institute of the SCC decided that additional advances, in the amount of EUR 422 000 shall be paid by Respondent by 23 May 2013 and so notified the Parties.

68.   On **24 May 2012**, the Arbitration Institute of the SCC wrote to the Parties, reminding Respondent to pay the outstanding advance of EUR 422 000 and extending the deadline to 1 June 2012.

69.   On **28 May 2012**, Claimants submitted **Claimants' Reply Memorial on Quantum** (C-III) to the Tribunal.

70.   On **30 May 2012**, Respondent advised the Tribunal that Respondent appointed Dr. Patricia Nacimiento of Norton Rose LLP as counsel.

71.   On **30 May 2012**, Respondent applied for an extension of the deadline to submit **Respondent's Rejoinder on Jurisdiction and Liability** (R-II).

72.   On **31 May 2012**, the Tribunal confirmed receipt of Respondent's two letters of 30 May 2012 and invited Claimants to submit any comments thereto by 4 June 2012.

73.   On **4 June 2012**, Claimants responded that they do not object to Respondent being provided a brief extension of one week or less for its Rejoinder, and left the matter to the Tribunal's discretion.

74.   On **5 June 2012**, Respondent urged the Tribunal to grant the requested extension and arguing that an extension was necessary in order that Respondent adequately reply to Claimants' new evidence.

75.   On **5 June 2012**, Claimants urged the Tribunal to grant a shorter extension that would leave the bulk of August and September available to prepare for the October hearing.



76.   On **6 June 2012**, the Tribunal sent the following email to the Parties.

> *[T]he Tribunal has taken note of the Parties' recent communications. Since they are well known to all concerned, there is no need to repeat or summarize them again.*
>
> *1.        Regarding Respondent's 1st letter of 30 May 2012.*
>
> *In this regard, I as Chairman disclose the following.*
>
> *Dr. Patricia Nacimiento, who is announced as a new additional counsel, is one of my two co-editors of the book "Arbitration in Germany" published some years ago and planned for a 2nd edition in the future. I have not ever had and still do not have any other professional contact with her. I do not consider that her appointment raises any professional conflict either for her or for my involvement in this arbitration. However, as a precaution, I inform the parties of the above (which anyhow can be seen from the book having been on the market for some years). I add that the other members of the Tribunal also do not see any conflict. Unless we receive an objection from one of the Parties within one week of this letter, we consider this matter as closed,*
>
> *2.        Regarding Respondent's 2nd letter of 30 May 2012.*
>
> *After an examination of the Respondent's extension application and the comments received from the Parties, mainly for the reasons mentioned in the Respondent's letter of 30 May, the Tribunal concludes that the requested extension shall be granted as follows:*
>
> *The dates in PO-4 are changed as hereafter:*
> □      *Section 4.4. to 13 August 2012*
> □      *Section 4.6. to 20 August 2012*
> □      *Section 4.7. to 27 August 2012*
> □      *with the later sections and, of course, the hearing dates remaining unchanged.*
>
> *3.        Hearing on Quantum.*
>
> *Pursuant to 4.14 of PO-4, the Tribunal has had an exchange on possible dates for the Hearing on Quantum. It has turned out that, after the Respondent's Rejoinder due by 21 November 2012, the only period prior to April 2012 at which all three members of the Tribunal are available for the 4 day hearing, is 28 to 31 January 2013.*
>
> *Therefore, the Tribunal sets the hearing for these dates and requests the Parties to block that period for a hearing in Paris. Further details will be determined later.*

77.   On **12 June 2012**, the Arbitration Institute of the SCC advised that Respondent still has not made the required EUR 422 000 payment. Claimants were, therefore, invited to make the payment by 19 June 2012.



78.   On **20 June 2012**, the Arbitration Institute of the SCC advised that Claimants provided the additional advance of EUR 422 000, as ordered.

79.   On **24 June 2012**, the Tribunal provided the Parties the ICC Centre's revised reservation confirmation for the shortened hearing in October 2012 and the ICC Centre's Quotation for the 2nd hearing to take place in January 2013. The Tribunal invited the Parties to confirm the reservation to the ICC Centre by 9 July 2012 and to inform the Tribunal by the same date.

80.   On **4 July 2012**, Claimants announced the confirmation of the reservations with the ICC Centre for the October 2012 and the January 2013 hearings and also announced the relocation of its counsel's Paris office.

81.   On **1 August 2012**, the Tribunal requested that the Parties submit Microsoft WORD versions of each of the Memorials to the Tribunal. The Parties complied on **3 August 2012**.

82.   On **13 August 2012**, Respondent filed its **Rejoinder on Jurisdiction and Liability**, and the accompanying witness statements and export reports, with the Tribunal.

83.   On **20 August 2012**, the Parties submitted their respective notifications of witnesses and experts for examination at the hearing, pursuant to PO-4 as amended on 6 June 2012, to the Tribunal.

84.   On **23 August 2012**, the Chairman distributed the **Tribunal's draft for a Procedural Order No. 5 regarding the details of the hearing in October** to the Parties. The Tribunal requested responses by 7 September.

85.   On **27 August 2012**, Respondent emailed the Tribunal. Respondent confirmed receipt of draft PO-5 and requested that the Tribunal confirm that, by the attached draft, the deadline initially established for 27 August 2012 for the Parties' comments to the respective letters of 20 August 2012 is superseded and that the next relevant deadline is 7 September 2012.

86.   On **27 August 2012**, the Tribunal confirmed the 27 August deadline.

87.   On **27 August 2012**, the Parties, in separate emails, confirmed their 20 August 2012 notifications of witnesses and experts for examination at the hearing and indicated that neither wished to make any changes to those lists.

88.   On **7 September 2012**, Claimants and Respondent, in separate letters, submitted their comments to draft PO-5 to the Tribunal.

89.   On **8 September 2012**, Respondent wrote in response to Claimants' letter of 7 September 2012, indicating that the contents of Claimants' letter deviated in part from the Parties' discussions. In particular, Respondent strongly objected to using the January hearing for any purpose other than quantum.



90.     On **11 September 2012**, the Tribunal thanked the Parties for their cooperation on logistics and arrangements with the ICC Hearing Centre and invited them to a telephone conference at 15:00 Paris time on 15 September.

91.     On **13 September 2012**, Claimants confirmed their attendance for the October hearing.  While Claimants would prefer to hear expert testimony at the hearing, they are mindful that the Tribunal considers that oral testimony from the experts may be unnecessary.   Instead, Claimants stated that they will not insist on presenting experts or on cross-examining Respondent's experts at the October hearing unless Respondent calls an expert.  Finally, Claimants stated that they did not consider a pre-hearing telephone conference with the Tribunal to be necessary.

92.     On **14 September 2012**, Respondent wrote to the Tribunal with comments on PO-5.  Respondent suggested that the order of witnesses should be notified by 26 September, at the latest.   Respondent also requested that witnesses Messrs. Smagulov, Aubakirov, and Aldashev be heard by video-conferencing.  Respondent asked that the deadline for Post-Hearing Briefs be set after the January 2013 hearing.

93.     On **14 September 2012** the Chairman replied, stating that Respondent would need to make witnesses Smagulov, Aubakirov, and Aldashev available for oral testimony at the hearing or, alternatively, could withdraw their witness statements, per section 3.6 of draft PO-5.

94.     On **14 September 2012**, Claimants requested the Tribunal's permission to submit a limited number of documents into evidence in advance of the October hearing, pursuant to points 7.3 and 10.4 of PO-1.

95.     On **16 September 2012**, Respondent urged dismissal of the request.

96.     On **16 September 2012**, Claimants replied to Respondent's email, explaining that the evidence sought to be admitted is pertinent and responsive to new arguments made by Respondent.

97.     On **18 September 2012**, the Tribunal issued **Procedural Order (PO) No. 5 Regarding further details of the Hearing on Jurisdiction and Liability** (PO-5). The entire text is provided below for ease of reference:

### *Procedural Order (PO) No.5*
### *Regarding further details of the Hearing on Jurisdiction and Liability*

*A draft of this PO was sent to the Parties for comments by 7 September 2012.*

*Thereafter, taking into account:*

- *the comments on the draft and further submissions received from the Parties,*
- *the Tribunal's letter to the Parties dated 11 September 2012*
- *and the submissions received from the Parties thereafter,*

*the Tribunal now issues the PO in its final form.*



## 1.    **Earlier Agreements and Rulings**

1.1.    *In order to have all rulings relevant for the hearing available in one document, this Order recalls the **earlier agreements and rulings** of the Tribunal and confirms them, to the extent that they are not amended in this PO, in bracketed text or elsewhere.  The Tribunal particularly takes into account the recent submissions and letters of the Parties.*

1.2.    *In particular, with reference to section 2.1 of PO-4, the **following sections of PO-3** are recalled and again confirmed:*

    3.7.    *Regarding the **length of the hearing**, the Tribunal recalls the agreement recorded in Section 6.18 of PO-1 which, taking into account the dates of the jointly proposed and accepted new timetable, provides for the Hearing to be held from 1 to 5 October 2012, and, if found necessary by the Tribunal after consultation with the Parties, extended to continue from 8 to 9 October 2012. [In this regard, section 4.11 of PO-4 decided on the bifurcation of the proceedings and ruled that extension days would include only 8 to 9 October.].*

    3.8.    *Further, the Tribunal recalls the agreement recorded in Section 10.5 of PO-1:*

    *Taking into account the time available during the period provided for the Hearing in the Timetable, the Tribunal intends to establish **equal maximum time periods** both for the Claimants and for the Respondent which the Parties shall have available. Changes to that principle may be applied for at the latest by 25 April 2012.*

    3.9.    *To clarify the **intention of the Tribunal regarding the conduct of the hearing**, though further details will have to be determined later according to Section 5.17 of PO-1 after consultation with the Parties, the Tribunal already now informs the Parties that it intends to include the following rulings which have proved to be efficient and acceptable to the parties in similar cases:*

    *[The later provisions of § 3.9 of PO-3 are not recalled, but are later included in this PO-5 in their amended form as now valid for the hearing.]*

    3.10.   *Taking into account the above rulings and intended conduct of the hearing and also taking into account, from the submissions already received, the volume and complexity of the issues to be dealt with at the hearing, the Tribunal concludes that the **period blocked for the hearing in accordance with the agreed timetable is sufficient.***

1.3    *Further, the Tribunal recalls from **PO-1 the following sections:***

    10.4.   ***No new documents** may be presented at the Hearing unless authorized in advance by the Tribunal. This also applies to documents regarding the*



**ARBITRATION INSTITUTE**
OF THE STOCKHOLM CHAMBER OF **462**

credibility of a witness or expert. But demonstrative exhibits may be shown using documents submitted earlier in accordance with the Timetable.

10.5.   Taking into account the time available during the period provided for the Hearing in the Timetable, the Tribunal intends to establish equal maximum time periods both for the Claimants and for the Respondent which the Parties shall have available. Changes to that principle may be applied for at the latest by 25 April 2012.

10.6.   A live **transcript** shall be made of the Hearing. The Parties, who shall share the respective costs, shall try to agree on and make the necessary arrangements in this regard and shall inform the Tribunal accordingly two months before the time set for the Hearing, i.e. 23 May 2012.

10.7.   Should the Parties be presenting a witness or expert not testifying in English and thus requiring **interpretation**, they are expected to provide the interpreter unless agreed otherwise. Should more than one witness or expert need interpretation, to avoid the need of double time for successive interpretation, simultaneous interpretation shall be provided. The Parties, who shall share the respective costs, shall try to agree on and make the necessary arrangements in this regard and shall inform the Tribunal accordingly two months before the time set for the Hearing, i.e. 23 May 2012.

1.4    Further, the Tribunal recalls from **the Tribunal's letter dated 11 September 2012** the following sections:

### 1. Logistics of the Hearing

1.1.    The Tribunal thanks the Parties for their arrangements with the ICC Hearing Centre.

1.2.    The Parties' selection of Mr. McGowan as **court reporter** is an excellent one. It should be pointed out to him that very few interruptions of the hearing will be possible so that he can bring a colleague in case he considers that necessary.

1.3.    For the same reasons, the **interpreters** should be notified and it may be necessary for them to bring a second team to allow un-interrupted simultaneous interpretation.

1.4.    In order to make sure that all the **logistics are ready before the beginning of the hearing Monday 1 October 2012 at 9:30**, it should be assured early enough (either on Sunday or very early Monday morning) that the hearing room is set up, including in particular that:

*       All files of the Parties are set up,
*       There is sufficient room for the members of the Tribunal to spread their files on their desks,
*       The hearing binders for the Tribunal on separate carts   behind        every member of the Tribunal,



&ast;     *Microphones for all speaking connected to loud speakers,*
&ast;     *All of the equipment of the court reporter is set up,*
&ast;     *All of the equipment for the simultaneous interpretation is set up, and*
&ast;     *There are sufficient plugs available for the individual laptops of the Parties, of the members of the Tribunal, and of the Tribunal Secretary, in addition to the live laptops of    the court reporter.*

*The Parties are invited to inform the Tribunal in advance at which time this preparation will be done so that the Tribunal Secretary can join them at an appropriate time.*

1.6.     *Subject to the provisions below, for the case that Mr. Seong-Hoon Kim is to be examined orally, the Parties should make all arrangements for a **video examination** from Korea for an appropriate time during the hearing agreed between the Parties and notified to the Tribunal.*

## 2.    Fact Witnesses

2.1.     *The Tribunal thanks the Parties for reducing the number of fact witnesses to be heard at the hearing.*

2.2.     *As agreed between the Parties, they are invited to notify the other Party and the Tribunal as early as possible and at the latest by the beginning of the hearing regarding the order in which the fact witnesses should be heard.*

## 3.    Experts

3.1     *The Tribunal thanks the Parties for their efforts and suggestions regarding the examination of experts.*

3.2.     *The Tribunal recalls from the chairman's letter of 23 August 2012 the indication that, in view of the extensive reports of most experts, the Tribunal considers that oral examination of most experts may not be necessary.*

3.3.     *Having reviewed the various considerations and suggestions of the Parties in their recent communications in this regard, the Tribunal rules as follows:*

     3.3.1.    *With their 1ˢᵗ round of Post-Hearing Briefs after the October hearing, the Parties may submit comments of their experts, but only regarding any new developments or issues which they have not addressed in their earlier reports, if considered necessary.*

     3.3.2.    *With their 2ⁿᵈ round of Post-Hearing Briefs after the October hearing, the Parties may submit reply comments of their experts to the comments of the experts of the other Party submitted in the 1ˢᵗ round, if considered necessary.*



3.3.2. *[sic] If, in spite of the above opportunity for written additional comments by the experts, a Party insists that oral examination should take place at the hearing, the examination of experts will be conducted by expert conferencing of the experts from both sides on the respective issues as follows:*

- *Short introduction up to 5 minutes of each expert by the Party which presented that expert,*
- *Questions by the Parties to the experts, but only regarding any new developments or issues which the experts have not yet addressed in their earlier reports,*
- *Additional questions by the Tribunal, if any, and*
- *Follow-up questions by the Parties on the questions raised by the Tribunal, if any.*

3.3.3. *In so far as a Party insists on oral examination of an expert according to section 3.3.2. above, it shall notify the Tribunal **by noon (Paris time) Friday 14 September 2012***

- *of the respective expert who should be examined,*
- *the respective expert from the other side who should join the conferencing, and*
- *the issues on which the conferencing examination should focus.*

3.3.4. *In so far as a notification is made according to section 3.3.3. above, the Parties shall make the respective experts available at the hearing.*

3.3.5. *In preparation of the hearing, the notified experts regarding the same issues, in so far as they will attend the hearing, are invited to try to agree on a note, or otherwise send separate notes, listing major points of agreement and disagreement, and the **Parties** shall submit such notes to the Tribunal **by 24 September 2012**.*

## 4.   **Further procedure**

4.1. *As the Parties must have sufficient time to prepare the hearing and assure attendance (including getting visas etc) of the witnesses and experts required at the hearing, the Tribunal intends to issue **PO-5** as soon as possible after 14 September 2012 and any possible notifications received by that time. The Parties are invited to start their preparations for the hearing already now on the basis of the provisions in the draft PO-5 they received in so far as these are not affected by the rulings in this letter of the Tribunal.*

4.2. *At the present time and in view of the above rulings, the Tribunal does not consider it necessary to, additionally, hold a telephone conference for which an option is provided in section 4.9 of PO-4," if considered necessary by the Tribunal".*



4.3.   *In view of other commitments of the members of the Tribunal, the only possible date on which Mr. Haigh and the chairman would be available for a telephone conference on any further details would be Saturday 15 September. But Prof. Lebedev, who is travelling, is not sure he could join in.*

4.4.   *If the Parties agree that a telephone conference is still necessary and if they are available on that day, they are invited to arrange a telephone conference for that day which, in view of the time differences involved, should start at **15:00 hours Paris time on 15 September**.*

4.5.   *If it turns out that the Parties are not available on that date, the Tribunal will issue PO-5 taking into account any notifications and comments received from the Parties.*

4.6.   *At the end of the January hearing, the Tribunal will consult with the Parties whether a one day hearing should be set for final pleadings in April 2013.*

## 2.   **Procedural Steps before the Hearing**

2.1.   *Claimants are authorized to submit, **by 21 September 2012**, the new documents mentioned in its letter dated 14 September 2012. If Respondent wishes to submit any new documents in rebuttal to these documents, it may do so **by 27 September 2012**.*

2.2.   *In view of the great number of exhibits submitted by the Parties and in order to facilitate references and using these exhibits at the Hearing and to avoid that each member of the Tribunal has to bring all of them to the Hearing, the **Parties** are invited to bring to the Hearing:*

- *for the other Party and for **each** member of the Tribunal **Hearing Binders** in **A5 format** of those exhibits or parts thereof on which they intend to rely in their oral presentations at the hearing, together with a separate consolidated Table of Contents of the Hearing Binders of each Party.*
- *a **USB-Device** with the contents of the Hearing Binders for the other Party, for each member of the Tribunal, and for the Tribunal Secretary.*
- *for the use of the Tribunal, in **A5 format  one full set of all exhibits** the Parties have submitted in this procedure, together with a separate consolidated Table of Contents of these exhibits.*

## 3.   **Further Details regarding the Hearing**

3.1.   *As ruled in section 4.11 of PO-4, the Hearing shall be held at the **ICC Hearing Centre in Paris from 1 to 5 October 2012**, and, if found necessary by the Tribunal after consultation with the Parties, extended to continue from **8 to 9 October 2012.***

3.2.   *No extension of the hearing will be possible due to other commitments of members of the Tribunal.*



3.3.    *To give sufficient time to the Parties and the Arbitrators to prepare for and evaluate each part of the Hearings, the daily sessions shall not go beyond the period between 9:30 a.m. and 5:30 p.m. However, the Tribunal, in consultation with the Parties, may change the timing during the course of the Hearings.*

3.4.    *In accordance with section 10.5 of PO-1, the Tribunal establishes the following maximum time periods which the Parties shall have available for their presentations and examination and cross-examination of all witnesses and experts. Taking into account the Calculation of Hearing Time attached to this Order, the total maximum time available for the Parties (including their opening statements and closing arguments, if any) shall be as follows:*

> *15.5 hours for Claimants*
> *15.5 hours for Respondent*

*It is left to the Parties how much of their allotted total time they want to spend on their various Agenda items above, as long as the total time period allotted to them is maintained.*

3.5.    *The Parties shall prepare their presentations and examinations at the Hearing on the basis of the time limits established.*

3.6.    *If a witness whose statement has been submitted by a Party and whose examination at the Hearing has been requested by the other Party, does not appear at the Hearing, his or her statement will not be taken into account by the Tribunal. A Party may apply with reasons for an exception from that rule.*

### 4.    **Conduct of the Hearing**

4.1.    *In addition to the above cited provisions of PO-1, PO-3, and the Tribunal's letter dated 11 September 2012, the following shall apply:*

4.2.    *The following **Agenda** is established for the Hearing:*

> *1.    Introduction by the Chairman of the Tribunal.*

2.    *Opening Statements of not more than a total of two hours for each Party:*

*First on jurisdiction*
> *a)    Respondent up to 30 minutes*
> *b)    Claimants up to 30 minutes*

*Second on all other issues including the merits*
> *a)    Claimants up to 90 minutes,*
> *b)    Respondent up to 90 minutes.*

### 3.    **Fact Witnesses:**

3.1.    *In order to make most efficient use of time at the Hearing, written Witness Statements or Expert Reports shall generally be used in lieu of direct oral examination though exceptions may be admitted by the Tribunal. Therefore, insofar*



*as, at the Hearing, witnesses are invited by the presenting Party or asked to attend at the request of the other Party, the presenting Party may introduce the witness for up to 5 minutes and add a short direct examination on issues, if any, which have occurred after the last written statement or report of the witness has been submitted. The remaining hearing time shall be reserved for cross-examination and re-direct examination, as well as for questions by the Arbitrators.*

3.2.     *Unless otherwise agreed by the Parties: Examination of **Claimant's fact witnesses** in the order set by Claimant:*

a)     *Affirmation of witness to tell the truth.*
b)     *Short introduction by Claimants*
c)     *Cross-examination by Respondent.*
d)     *Re-direct examination by Claimants, but only on issues raised in cross-examination*
e)     *Re-cross examination by Respondent but only on issues raised in re-direct examination*
f)     *Remaining questions by members of the Tribunal, but they may raise questions at any time.*

3.3.     *Examination of **Respondent's fact witnesses** in the order set by Respondent:*

*For each:*
*vice versa as under 3.a) to f) above.*

### 4.     **Examination of experts***:*

*No experts will be examined orally at the hearing. But attention is drawn to the respective rulings in the Tribunal's letter dated 11 September 2012, quoted above.*

5.     *Any witness may only be recalled for rebuttal examination by a Party or the members of the Tribunal, if such intention is announced in time to assure the availability of the witness during the time of the Hearing.*

6.     *Remaining questions by the members of the Tribunal, if any.*

7.     *Discussion regarding the timing and details of post-hearing submissions and other procedural issues, including the question whether Post-hearing Briefs shall be submitted soon after the October Hearing or only after the January Hearing.*

4.3.     *Unless otherwise agreed between the Parties or ruled by the Tribunal, witnesses may be present in the Hearing room during the testimony of other witnesses.*



## 5. *Other Matters*

5.1 *The Tribunal may change any of the rulings in this Order, after consultation with the Parties, if considered appropriate under the circumstances.*

5.2 *The Parties are invited to submit, by 19 October 2012, a short statement to the Tribunal regarding which Party made which payments up to the October Hearing for deposits on arbitration costs to the SCC, and for the expenses related to the reservation of the ICC Hearing Centre, the transcript, and the interpretation at the Hearing.*

### *Attachment to Procedural Order No. 5:*

#### *Calculation of Hearing Time*

| *Time available* | *Hours* |
|---|---|
| *Hours* | |
| | *56* |
| *7 days of 8 hours* | *56* |

*Time needed*

| | |
|---|---|
| *Lunch breaks: 7 x 1 hour* | *7* |
| *Various breaks (procedural and coffee)* | *7* |
| *Procedural discussions (estimated total)* | *4* |
| *Introduction by Chairman* | *0.5* |
| *Additional Questions by Members of Tribunal* | *6.5* |
| *Total time for other purposes* | *25.0* |
| *Total time available to Parties* | *31* |
| ***Time available to each Party (including their opening statements and closing arguments, if any)*** | ***15.5*** |

98. On **20 September 2012**, Claimants sent exhibits C-700 – C-717 to the Tribunal and to Respondent.

99. On **21 September 2012**, Respondent stated that it had not received any documents from Claimants prior to the deadline and requested that the Tribunal exclude the documents.

100. On **22 September 2012**, Claimants sent Respondent the allegedly outstanding exhibits, via email.

101. On **22 September 2012**, Respondent requested that the Tribunal exclude Claimants' new and allegedly late exhibits from the arbitration.

102. On **22 September 2012**, Claimants sent the Tribunal the FedEx tracking report, demonstrating that Claimants had met the Tribunal's deadline.



103. On **23 September 2012**, Claimants wrote in response to Respondent's request to exclude certain exhibits submitted on 21 September, explaining that Respondent's complaints are without merit and should be rejected.

104. On **24 September 2012**, Respondent again objected to Claimants' exhibits.

105. On **27 September 2012**, the Chairman invited the Parties to submit a final list of all persons attending the hearing, and their respective sides identifying their function, at the start of the hearing.

106. On **27 September 2012**, Respondent submitted new exhibits in reply to Claimants' new documents submitted on 21 September 2012. Respondent requested that the Tribunal order the Claimants to indicate specific parts of the documents they intend to rely upon.

107. On **28 September 2012**, the Tribunal wrote to the Parties in reference to Respondent's applications of 24 and 27 September. The Tribunal indicated that the application to exclude documents would be decided after the Tribunal has had an opportunity to discuss it at the beginning of the hearing. The Tribunal invited Claimants to indicate, at the beginning of the hearing, the specific parts of the exhibits submitted on 21 September 2012 upon which they intend to rely. The Tribunal also allowed Respondent to extend its direct examinations beyond 5 minutes, so far as the new exhibits would concern matters not previously addressed in the witness statements.

108. On **28 September 2012**, Claimants stated that they would not object to Respondent's new witness statements and agreed to withdraw the documents not accompanied by English translations. Claimants requested leave under PO-1 ¶ 5.12 to submit two additional documents.

109. On **1 October 2012**, Respondent had no objection to Claimants' withdrawal of its documents submitted on 21 September 2012. Respondent stated, however, that its preparation for the hearing would be prejudiced by the late submission of additional material. Respondent offered to allow the admission of new documents in exchange for Mr. Rakhimov being allowed to submit a third witness statement on the matter.

110. The **Hearing on Jurisdiction and Liability** was held at the ICC Hearing Centre in Paris from **1 – 8 October 2012**. A transcript was made. Reginald Smith, Kenneth Fleuriet, Kevin Mohr, Heloise Herve, Amy Roebuck Frey, Alexandra Kotlyachkova, and Valerya Subocheva of King & Spalding appeared on behalf of Claimants. Dr. Patricia Nacimiento, Joseph Tirado, Simon Ramsden, Zhanibek Saurbek, Max Stein, and Sven Lange of Norton Rose LLP and Prof. Igor V. Zenkin of the Moscow Regional Collegium of Advocates appeared on behalf of Respondent. Also appearing for Claimants were Zhennia Silverman and Vicki Mason of King & Spalding and Mihail Popovici of the Ascom Group SA. Also appearing for Respondent were Anastasia Maltseva and Natalia Nikiforova of Norton Rose, Marat Beketayev, Secretary of the Ministry of Justice and Deputy Minister of Justice, Yerlan Tuyakbayev, Director of the Department of Legal Support and International Cooperation of the Financial Police, Alan Tlenchiev, Head of the Division on the Supervision over Compliance with Environmental



Legislation of the Department of Supervision over Compliance with Legislation in the socio-economic sphere of the GPO Office, Aman Sagatov, Senior Prosecutor of the Division on the Supervision over Compliance with Environmental Legislation of the Department of Supervision over Compliance with Legislation in the socio-economic sphere of the GPO, Gani Bitenov, Chief Expert of the Department of Protection of State Property Rights of the Ministry of Justice, and Prof. Martha Brill Olcott, Carnegie Endowment for International Peace. Anatolie Stati, Artur Lungu, Grigore Pisica, and Alexandru Condorachi were also present.

111. On **1 October 2012**, the Tribunal heard the Parties' respective opening statements on jurisdiction / merits and heard testimony from Artur Lungu.

112. On **2 October 2012**, the Tribunal heard testimony from Mr. Anatolie Stati, Mr. Grigore Pisica, Mr. Victor Romanosov, and Mr. Alexandru Condorachi.

113. On **3 October 2012**, the Tribunal heard testimony from Alexandru Condorachi, Mr. Alexandru Cojin, Mr. Veaceslav Stejar, Mr. Eduard Calancea, and Minister Sauat Mukhametbayevich Mynbayev.

114. On **4 October 2012**, the Tribunal heard testimony from Mr. Herve Chagnoux, Mr. Andrey Kravchenko, and Mr. Medet Suleymenov.

115. On **5 October 2012**, the Tribunal heard testimony from Mr. Arman Testemirovich Rakhimov and Mr. Daniyar Mukanovich Turganbayev.

116. On **6 October 2012**, Respondent notified the Tribunal of its intention to call Mr. Akhmetov for direct examination.

117. On **8 October 2012**, the Tribunal heard testimony from Dr. Seong Hoon Kim, Mr. Serik Dosymovich Rakhimov, Mr. Rustam Nurlanovich Akhmetov, Mr. Mirbulat Zarifovich Ongarbaev, and Mr. Salamat Sartevich Baymaganbetov. At the close of the hearing, the Chairman asked the Parties if they had any objections to the procedure, as conducted to date. The Parties each answered that they had no objections.

118. On **15 October 2012**, the Tribunal issued **Procedural Order No. 6** (PO-6):

*Procedural Order (PO) No. 6*
*Regarding the further procedure after*
*the Hearing on Jurisdiction and Liability*

*1. Timetable*

*Resulting from the discussion between the Parties and the Tribunal at the end of the Hearing on Jurisdiction and Liability in Paris, the following timetable is set for the further procedure:*

*1.1.* *By 19 October 2012, as ruled in § 5.1 of PO-5, the Parties are invited to submit a short statement to the Tribunal regarding which Party made which payments up to the October Hearing for deposits on arbitration*



*costs to the SCC and for the expenses related to the reservation of the ICC Hearing Centre, the transcript, and the interpretation at the Hearing.*

1.2.   *By **21 November 2012**, as ruled in § 4.13 of PO-4, Respondent is invited to submit Respondent's Rejoinder on Quantum.*

*No new evidence on quantum may be submitted after this date unless the Tribunal has authorized such submission in reply to a reasoned request by a Party.*

1.3.   *By **3 December 2012**, the Parties are invited to notify which witnesses and experts on quantum presented by themselves or the other side they wish to examine at the January Hearing.*

1.4.   *By **10 December 2012**, the Parties are invited to notify whether they wish to change their notifications of 3 December in view of the notification received from the other side.*

1.5.   *In preparation of a possible expert conferencing at the hearing, **experts** that have been notified for examination at the January hearing are invited to contact, either directly or with the help of the Parties, the expert from the other side addressing the same issues and try to agree on a short note identifying the major sub-issues on which they agree and disagree.*

1.6.   *By **11 January 2013**, the Parties are invited to submit*

   •   *either the notes agreed by the experts according to section 1.5 above or separate notes of each expert in so far as they cannot agree on a joint note,*

   •   *lists of the persons which intend to participate in the hearing from their respective sides.*

1.7.   ***28 to 31 January 2013**, starting at 9:30, **Hearing on Quantum** at the ICC Hearing Centre, 112 Avenue Klebèr, Paris. The Parties are invited to make the necessary logistical arrangements as they did for the October hearing. The Tribunal intends to issue a Procedural Order closer to the time of the hearing regarding further details, in a similar fashion as it did for the October hearing.*

1.8.   *By **8 March 2013**, simultaneous submission of 1st Round Post Hearing Briefs by the Parties regarding all issues addressed in the October and January hearings. As provided in § 3.3.1 of the Chairman's letter of 11 September 2012, the submissions may include comments of their experts on issues of jurisdiction and liability, but only regarding any new developments or issues which these have not addressed in their earlier reports. Further details regarding the Post Hearing Briefs may be determined in a discussion with the Parties at the end of the January hearing.*



1.9.     **By 29 March 2013**, *simultaneous submission of 2nd Round Post Hearing Briefs, but only addressing issues in rebuttal of the 1st Round Post Hearing Brief of the other side.*

1.10.    **By 19 April 2013**, *simultaneous submission of Cost Statements will be made by the Parties.*

1.11.    **By 26 April 2013**, *simultaneous submission of comments, if any, regarding the Cost Statement of the other side.*

2.       **Other rulings**

         *The Tribunal may change or amend the above rulings if considered appropriate after consultation with the Parties.*

119. On **17 October 2012**, Respondent requested a two-week extension on its deadline to make its submission on quantum, to 5 December 2012.

120. On **18 October 2012**, the Tribunal granted the extension until 1 December 2012, so long as both Parties could agree and confirm that they could maintain the procedural steps in the timetable in PO-6.

121. On **18 and 19 October 2012**, respectively, Claimants and Respondent confirmed that they could maintain the procedural timetable and consented to the extension.

122. On **19 October 2012**, Claimants submitted a costs summary to the Tribunal, detailing Claimants payment of the SCC costs to date, amounting to € 1,034,000.00.

123. On **19 October 2012**, Respondent stated that it will pay its share of the costs upon receipt of the invoices.

124. On **1 December 2012**, Respondent filed its **Rejoinder on Quantum,** together with supplementary evidence, to the Tribunal.

125. On **3 December 2012**, Respondent submitted the English version of Mr. Khalelov's witness statement to the Tribunal.

126. On **3 December 2012**, Claimants and Respondent each submitted their respective notifications of witnesses and experts to the Tribunal.

127. On **7 December 2012**, Claimants wrote to Respondent, renewing requests that Respondent produce the four referenced enclosures to R-41.1.

128. On **10 December 2012**, Claimants and Respondent each submitted their updated notifications of witnesses and experts to the Tribunal. Each commented on the other's notifications. Claimants moved to exclude newly submitted evidence and renewed arguments to exclude other evidence.

129. On **13 December 2012**, Respondent answered Claimants' arguments from their 10 December 2012 letter.



130. On **17 December 2012**, the Tribunal issued **Procedural Order No. 7** (PO-7):

### *Procedural Order (PO) No.7*
**Regarding the Preparation and Conduct of the Hearing on Quantum**

#### *1.     Introduction*

*In view of the recent submissions of the Parties, the Tribunal considers that it should already now issue its Procedural Order provided for in section 1.7 of **PO-6**.*

#### *2.     Preparation of the Hearing*

2.1.     *The Tribunal also confirms its earlier rulings on the form and contents and on the timetable for the Parties' submissions including those on the still outstanding procedural steps according to PO-6.*

2.2.     *The Tribunal considers that, at this stage, it should not exclude any evidence provided by the Parties. But this is without prejudice to later decisions during or after the hearing in view of the following.*

2.3.     *As is clear from the earlier rulings of the Tribunal, the hearing in January is strictly limited to matters of QUANTUM.*

2.4.     *The Parties are invited to prepare their presentations and examination of witnesses and experts at the hearing accordingly. Any parts of submissions or any evidence going beyond that limit will not be considered by the Tribunal. In so far as the Parties disagree in this regard, they may explain their positions at the hearing and the Tribunal will take that into account.*

2.5.     *The Parties may, in direct contact, try to reach agreement on the final list of witnesses and experts to be examined at the hearing and on the order of examination, and inform the Tribunal in this regard by **11 January 2013**.*

#### *3.     Conduct of the Hearing*

3.1.     *The hearing shall take place at the ICC Hearing Centre from 28 to 31 January 2013.*

3.2.     *Subject to PO-6 and to the following provisions, the rulings on the conduct of the October Hearing in **PO-5** apply, mutatis mutandis, also to the January Hearing.*

3.3.     *Particular attention is drawn to the following provisions of PO-5:*

3.3.1.   *§ 2.2. on **Hearing Binders***

3.3.2.   *§ 3.4. on **time slots** attributed to the Parties.*



*In this context, according to the adapted calculation of hearing time as annexed to this PO, the total maximum time available for the Parties (including their opening statements and closing arguments, if any) shall be as follows:*

> *8 hours for Claimants*
> *8 hours for Respondent*

*It is left to the Parties how much of their allotted total time they want to spend on their various Agenda items, as long as the total time period allotted to them is maintained.*

*At the beginning of the hearing, the Parties are invited to nominate one member of their teams who will coordinate the time keeping with the Tribunal Secretary.*

3.3.3. *§ 4.2. on the **Agenda of the Hearing***

3.3.4. *After the preparation according to sections 1.5 and 1.6 of PO 6, § 1.4.3. of PO-5 provided on **expert conferencing**:*

*(T)he examination of experts will be conducted by expert conferencing of the experts from both sides on the respective issues as follows:*

- *Short introduction up to 5 minutes of each expert by the Party which presented that expert,*
- *Questions by the Parties to the experts, but only regarding any new developments or issues which the experts have not yet addressed in their earlier reports,*
- *Additional questions by the Tribunal, if any, and*
- *Follow-up questions by the Parties on the questions raised by the Tribunal, if any.*

**Attachment to Procedural Order No. 7:**

**Calculation of Hearing Time**

| *Time available* | *Hours* |
|---|---|
| *4 days of 8 hours* | *32* |

**Time needed**

| | |
|---|---|
| *Lunch breaks: 4 x 1 hour* | *4* |
| *Various breaks (procedural and coffee)* | *4* |
| *Procedural discussions (estimated total)* | *4* |
| *Introduction by Chairman* | *0.5* |
| *Additional Questions by Members of Tribunal* | *3.5* |


ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF **475**

| *Total time for other purposes* | *16.0* |
|---|---|
| *Total time available to Parties* | *16* |

***Time available to each Party (including their opening*** *8*
***statements and closing arguments, if any)***

131. On **18 December 2012**, Suvi Lappalainen of the SCC wrote to the Parties. In reference to the correspondence between the Tribunal and the Parties about appointing an Administrative Secretary, the SCC decided that additional advances in the amount of EUR 60 000 shall be paid in equal shares and will cover the fee of the secretary. The Parties were requested to make payment by 2 January 2013.

132. On **18 December 2012**, Claimants requested that Respondent provide the documentation or data relied upon in the expert reports submitted on 1 December 2012, pursuant to Art. 5(2)(e) IBA Rules. Claimants pointed out that Respondent had already failed to provide such information earlier in the procedure, requiring a procedural order to be issued. Claimants argued that they are highly prejudiced by Respondent's failure to provide this documentation, since it hinders their trial preparation.

133. On **31 December 2012**, Claimants informed Respondent and the Tribunal that, on 17 December 2012, Claimants entered into a Sharing Agreement with the holders of the majority of the notes issued by Tristan Oil Limited.

134. On **2 January 2013,** Claimants sought instruction from the Tribunal that Respondent is not excused from bringing Mr. Mynbayev and Mr. Suleymenov to the Quantum Hearing.

135. On **2 January 2013**, Claimants submitted **Claimants' Application to Compel Production** to the Tribunal. Therein, Claimants requested the production of four documents that the Tribunal ordered produced in PO-2. Claimants requested that the Tribunal draw specific adverse inferences against Respondent, should Respondent fail to produce these documents.

136. On **3 January 2013**, the Arbitration Institute of the SCC notified the Tribunal and the Parties that payment of 30 000 Euro had been made by Claimants, and that 30 000 from Respondent was still outstanding. Later that day, Respondent confirmed that payment had been made.

137. On **4 January 2013**, Respondent submitted **Respondent's Application for Postponement of the Hearing on Quantum**. Respondent also requested that the Tribunal grant it leave to reply to Claimants' "Application to Compel Production" and to submit a response to the Sharing Agreement and to dismiss Claimants' Application to Compel Production.

138. On **7 January 2013**, Claimants submitted their **Opposition to Respondent's Application for Postponement of Hearing on Quantum**.



139. On **9 January 2013**, Respondent argued that postponement of the Hearing and the dismissal of Claimants' "Application to Compel Production" is the only way to safeguard procedural justice and to restore procedural equality.

140. On **10 January 2013**, the Tribunal issued **Procedural Order (PO) No. 8 Regarding several Applications of the Parties**, provided below:

### _Procedural Order (PO) No.8_
### _Regarding several Applications of the Parties_

#### _1.     Introduction_

_The Parties have submitted several Applications before the Hearing scheduled from 28 to 31 January 2013. As they are well-known to all concerned, the Tribunal will not repeat or summarize these Applications or the arguments put forward by the Parties. And, as it is in the interest of the Parties to have these Applications decided without any delay, to avoid longer deliberation exchanges between members of the Tribunal, this PO will not go into any details of the Tribunal's reasoning in dealing with the arguments presented by the Parties. Rather, in this PO, the Tribunal will immediately turn to its conclusions and decisions on the Applications._

#### _2.     Claimants' Application dated 2 January 2013 for Document Production_

_The procedure to compel document production has been concluded at a much earlier stage of the proceedings in this case. Insofar as a Party has not produced as ordered by the Tribunal, the consequences of such have already been identified in section 4 of PO-2. Issuing a further order on document production is not provided in the timetables of POs 6 and 7 and would seriously disturb the preparation of the Hearing both for the Parties and the Tribunal._

_**Therefore, this Application is dismissed. However, the Parties are free to argue at the hearing and in their Post-Hearing Briefs in this regard.**_

#### _3.     Claimants' Application dated 2 January 2013 to instruct Respondent that it is not excused from bringing Mr. Mynbaev and Mr. Suleimenov to the Hearing on Quantum_

_The timetable of PO 6 provided that the last changes to the Parties' requests to have witnesses of the other side attending had to be submitted by 10 December 2012. On 20 December 2012, Claimants submitted a further change regarding the above mentioned witnesses. Claimants point out that Respondent has not articulated any prejudice by this late request. However, in view of the clear timetable set by PO 6, the Tribunal concludes that it is not appropriate to order the attendance of the two witnesses._



*Therefore, this Application is dismissed. However, Respondent is free to bring these witnesses to the Hearing and Parties are free to submit any arguments in this regard at the Hearing or in their Post-Hearing Briefs.*

**4.** **Claimants' submission on 31 December 2012 of the Sharing Agreement with Tristan Noteholders, and Respondent's request for leave to submit a written statement thereto**

*The Sharing Agreement is a new development with relevance for the Hearing on Quantum and the submission could not be filed earlier in the procedure. Indeed, not filing it would have been inappropriate.*

*Therefore, the Tribunal accepts this submission. The Parties are free to argue in this regard at the Hearing and in their Post-Hearing Briefs.*

**5.** **Respondent's Application to Postpone the Hearing on Quantum**

*In view of the dismissal of Claimants' Applications in sections 2 and 3, above, the major reasons for this Application of Respondent are moot. The Tribunal is not persuaded by Respondent's arguments that, even in case of such dismissals, it would be prejudiced in its preparation of the Hearing. As provided above, the Parties are free to submit further arguments in this regard at the Hearing and in their Post-Hearing Briefs. For the same reason, the late submission of the Sharing Agreement does not justify a postponement of the Hearing. After the bifurcated and very long procedure in this case, a postponement of the hearing (which would probably delay the procedure for at least several months in order to find a new hearing period at which all concerned would be available) could only be justified for absolutely compelling reasons. In view of the above considerations and conclusions, such reasons do not exist.*

*Therefore, this Application is dismissed. However, again, the Parties may submit further arguments in this regard at the Hearing and in their Post-Hearing Briefs.*

141. On **11 January 2013**, Respondent made a Procedural Objection regarding the Tribunal's decision to dismiss Respondent's Application for Postponement of the Hearing on Quantum.

142. On **11 January 2013**, Claimants and Respondent provided the Tribunal information regarding the Hearing on Quantum, pursuant to PO-6 and PO-7.

143. On **18 January 2013**, the SCC informed the Tribunal that the additional advance on costs has been paid as ordered.

144. On **18 January 2013**, Claimants requested authorization from the Tribunal to submit documents into evidence in advance of the Quantum Hearing.

145. On **19 January 2013**, the Tribunal invited Respondent to submit comments on Claimants' Applications of 18 January 2013 by 22 January 2013.



146. On **22 January 2013**, Respondent (1) requested that the Tribunal deny Claimants' request for leave to submit new documents, (2) proposed the order of witness and expert examination, (3) requested the Tribunal's guidance on whether the presence of Mr. Sachsalber would be necessary at the Hearing, (4) requested that Ms. Hardin appear at the Hearing, and (5) remarked on proposed corrections to the valuation experts' testimony.

147. On **23 January 2013**, the Tribunal issued **Procedural Order (PO) No. 9 Regarding further Applications of the Parties and further Details of the Hearing (PO-9)**, provided below:

### *Procedural Order (PO) No.9*
### *Regarding further Applications of the Parties*
### *and further Details of the Hearing*

#### *1.       Introduction*

*By letters dated 11, 18, and 22 January 2013, the Parties have submitted several further Applications and some information and suggestions regarding the conduct of the Hearing scheduled from 28 to 31 January 2013. As they are well-known to all concerned, the Tribunal will not repeat or summarize these submissions or the arguments put forward by the Parties. And, as it is in the interest of the Parties to have these matters decided without any delay, to avoid the need of longer deliberation exchanges between members of the Tribunal, this PO will not go into any details of the Tribunal's reasoning in considering the arguments presented by the Parties. Rather, in this PO, the Tribunal will immediately turn to its conclusions and decisions.*

#### *2.       Claimants' Application dated 18 January 2013 for leave to submit certain documents*

*The submission of a considerable number of further documents just a few days before the hearing would seriously disturb the preparation of the Hearing, both for the Parties and the Tribunal, and would not provide Respondent sufficient time to evaluate the documents, formulate replies, and try to find any rebuttal evidence. The Sharing Agreement has already been accepted by section 4 of PO-8 and, as mentioned in section 1 of Respondent's letter of 22 January 2013, has been available to Respondent since 31 December 2012.*

***Therefore, with the exception of the admission of the Sharing Agreement, this Application is dismissed. However, the Parties are free to argue at the hearing and in their Post-Hearing Briefs in this regard.***

#### *3.       Respondent's Application to submit a two-page note correcting minor errors in Deloitte's valuation report of 30 November 2012.*

***Since such a note would be more convenient for all concerned than oral corrections at the beginning of the examination of the expert, the submission is admitted.***

#### *4.       Agenda of the Hearing*



*Taking into account the submissions from the Parties, and subject to any final changes agreed at the beginning of the Hearing, the Tribunal intends to follow the following Agenda:*

1.     **Introduction** *by the Chairman of the Tribunal.*

2.     **Opening Statements** *of a length determined by each Party*

3.     **Examination of Fact Witnesses**

      3.1.    *In order to make most efficient use of time at the Hearing, written Witness Statements shall generally be used in lieu of direct oral examination, though exceptions may be admitted by the Tribunal. Therefore, insofar as, at the Hearing, witnesses are invited by the presenting Party or asked to attend at the request of the other Party, the **presenting Party may introduce the witness for up to 5 minutes, and add a short direct examination** on issues, if any, which have occurred after the last written statement of the witness has been submitted. The remaining hearing time shall be reserved for cross-examination and re-direct examination, as well as for questions by the Arbitrators.*

      3.2.    *Unless otherwise agreed by the Parties: first, there will be the Examination of **Claimants' fact witnesses** in the order set by Claimants:*

          *For each witness, the examination will be conducted as follows:*

          *a)   Affirmation of witness to tell the truth*
          *b)   Short introduction by Claimants*
          *c)   Cross-examination by Respondent.*
          *d)   Re-direct examination by Claimants, but only on issues raised in cross-examination*
          *e)   Re-cross examination by Respondent but only on issues raised in re-direct examination*
          *f)    Remaining questions by members of the Tribunal, but they may raise questions at any time.*

      3.3.    *Examination of **Respondent's fact witnesses** in the order set by Respondent:*

          *For each: the examination will be conducted in the same pattern vice versa as mentioned for Claimants' witnesses.*

4.     **Examination of Experts**



4.1   *By letters of 11 January 2013, the Parties have communicated an agreement, and the Tribunal agrees, on the following order of examination:*

    *a)*   *Claimants' experts*

    *    Direct examination of Claimants' expert by Claimants*
    *    Cross-examination by Respondent*
    *    Re-direct examination by Claimants, but only on issues raised in cross- examination*
    *    Re-cross examination by Respondent but only on issues raised in re-direct examination*

    *b)*   *Respondent's experts*

    *The same order vice versa as for Claimants' expert shall apply*

    *c).*   *Experts conferencing by the Tribunal*
    *d)*   *Follow-up questions by the Parties on the questions raised by the Tribunal, if any*

5.   *Any witness or expert may only be **recalled** for rebuttal examination by a Party or the members of the Tribunal, if such intention is announced in time to assure the availability of the witness during the time allotted to the Parties at the Hearing.*

6.   *Remaining **questions by the members of the Tribunal**, if any.*

7.   ***Discussion of the further procedure**, taking into account the timetable already established by PO-6, and any new developments and submissions after that PO.*

**5.   Certain Further Details of the Conduct of the Hearing**

5.1.   *The Tribunal has taken note of the Parties' communications regarding the attendance of witnesses and experts.*

5.2.   *Unless, in reply to Respondent's letter of 22 January 2013, Claimants notify Respondent no later than **12 noon Friday 25 January 2013 Paris time**, that they insist on orally examining **Mr. Sachsalber, Mr. Powell and Mr. Rhodes**, these persons do not have to attend the hearing.*

5.3.   *In view of the explanation in Respondent's letter of 22 January 2013, the Tribunal accepts that **Mr. Seitinger**, who is situated in Pakistan, will be examined at the hearing in the morning of the last day of the hearing, i.e. 31 January 2013.*



*5.4.    If, as notified by Claimants' letter of 11 January 2013, **Ms. Hardin** will not be available for examination at the hearing, the Parties are free to argue at the hearing and in their Post-Hearing Briefs in this regard.*

**6.       Respondent's    Application    to    Extend    the    Time    limits    for Submission of the Post-Hearing Briefs and Cost Submissions**

***This matter will be discussed with the Parties at the end of the Hearing on Quantum in order to find an agreement between and with the Parties, and otherwise will be decided by the Tribunal.***

148. On **23 January 2013**, Respondent submitted its "*Additional Note to the Expert Report dated 30 November 2012*" to the Tribunal.

149. On **24 January 2013**, Claimants requested leave to submit an explanatory note from FTI to correct errors that FTI discovered in reviewing the Deloitte GmbH expert report and preparing for the expert conferences.

150. On **25 January 2013** the Tribunal admitted FTI's 6 page correction note.

151. On **25 January 2013**, Respondent submitted the joint issue list of Claimants' expert Ryder Scott and Respondent's expert GCA.

152. On **25 January 2013**, Claimants submitted (1) the Sharing Agreement (C-721), (2) the Explanatory Note of FTI, and (3) a revised translation of Catalin Broscaru's witness statement, to the Tribunal. Claimants also gave notice that they intend to call Mr. Romanosov for direct examination.

153. On **26 January 2013**, Respondent wrote to the Tribunal with regard to Claimants' submission of the "*FTI Amendments to Expert Report*" and the Direct Examination of Mr. Romanosov and other witnesses.

154. On **27 January 2013**, Claimants submitted the revised schedules and supporting documents requested by Respondent on 26 January 2013.

155. The Hearing on Quantum was held at the ICC Hearing Centre in Paris from **28 – 31 January 2013**. A transcript was made. Reginald Smith, Kenneth Fleuriet, Kevin Mohr, James Toher, Heloise Herve, Amy Roebuck Frey, Alexandra Kotlyachkova, and Valerya Subocheva of King & Spalding appeared on behalf of Claimants. Dr. Patricia Nacimiento, Max Stein, and Sven Lange of Norton Rose, LLP and Joseph Tirado of Winston & Strawn appeared on behalf of Respondent. Also appearing for Claimants were Zhennia Silverman and Vicki Mason of King & Spalding, and Mihail Popovici of Ascom Group, SA. Also appearing for Respondent were Zhanibek Saurbek, Anastasia Maltseva, and Natalia Nikiforova of Norton Rose, Marat Beketayev, Secretary of the Ministry of Justice and Deputy Minister of Justice, Yerlan Tuyakbayev, Director of the Department of Legal Support and International Cooperation of the Financial Police, Aman Sagatove, Senior Prosecutor of the Division on the Supervision over Compliance with Environmental Legislation of the Department of Supervision over Compliance with Legislation in the socio-economic sphere of the GPO, Gani Bitenov, Director of the Department of Protection of the States Property Rights, Ministry of Justice, and



Done Tulegen, Deputy Director of the Legal Services Department, and the Ministry of Oil and Gas.

156. On **28 January 2013**, the Tribunal heard opening statements on Quantum from Claimants and from Respondent. The Tribunal also heard testimony from Mr. Artur Lungu. Counsel for Claimants and counsel for the Respondent also indicated that they had agreed to request "*an additional hour or two*" per side, to present their case. The Tribunal indicated that the hearing could not go beyond Thursday evening, but stated that it may be possible to add time at the end.

157. On **29 January 2013**, the Tribunal heard testimony from Mr. Victor Romanosov, Mr. Catalin Broscaru, Mr. Alexandru Cojin, Mr. Anatolie Stati, and Mr. Nurlan Rahimgaliev.

158. On **30 January 2013**, the Tribunal heard testimony from Prof. Martha Brill Olcott, Prof. Tomas Balco, Mr. Michael Nowicki, and James Latham of Ryder Scott, and Dr. Stephen Wright, Mr. Tony Goodearl, and Mr. Michael Wood of GCA. The Tribunal, after considering arguments from both Parties, decided to give each Party an additional hour to present its case, over Dr. Nacimiento's objection.

159. On **31 January 2013**, the Tribunal heard testimony from Mr. Michael Nowicki, Jr. James Latham, Dr. Stephan Wright, Mr. Michael Wood, and Mr. Tony Goodearl via witness conferencing. The Tribunal also heard testimony from Mr. Howard Rosen of FTI and Mr. Tomas Gruhn of Deloitte GmbH, separately, before taking testimony from both via witness conferencing. The Tribunal also heard testimony from Mr. Peter Seitinger. Finally, the Tribunal discussed the further procedure with the Parties. At the close of the hearing, the Chairman asked the Parties if they had any objections to the way the Tribunal has conducted the procedure up until that point. Dr. Nacimiento, on behalf of the Respondent, answered "*we have filed objections and, with all due respect, we uphold our objections*." Mr. Smith for Claimants answered that there were no objections on behalf of Claimants.

160. On **4 February 2013**, Claimants provided Respondent and the Tribunal access to the 3D seismic data, via a secured website and a CD/DVD.

161. On **6 February 2013**, the Tribunal sent its draft of PO-10 to the Parties and requested comments thereto by 13 February 2013.

162. On **13 February 2013**, Respondent submitted its response to draft PO-10, together with a reiteration of Respondent's objections and 5 Annexes.

163. On **13 February 2013**, Claimants stated that they have no comments to PO-10.

164. On **14 February 2013**, the Chairman, on behalf of the Tribunal, invited Claimants to submit any comments it may have to Respondent's submission, no later than Saturday, 16 February 2013.

165. On **16 February 2013**, Claimants responded to Respondent's submission of 13 February 2013 by letter supported by three annexes.

166. On **17 February 2013,** Respondent responded to Claimants' letter of 16 February 2013.

167. On **20 February 2013**, the Tribunal issued **Procedural Order (PO) No. 10 Regarding the Further Procedure**:

### *Procedural Order (PO) No. 10*
### *Regarding the Further Procedure*

#### *1.      Introduction*

*1.1      This PO contains rulings resulting from the discussion between the Parties and the Tribunal at the January Hearing. On 6 February 2013, a draft of this PO was circulated to the Parties for comments within one week. Taking into account the discussion at the hearing and the comments received from the Parties, this PO is now issued in its final form.*

*1.2      The Tribunal records that, at the end of the hearing, Claimants agreed to provide, by Monday 4 February 2013, the 3D Seismic data discussed at the hearing and the related documentation to Respondent.*

#### *2.      Respondent's Applications dated 13 February 2013.*

*2.1.      In reply to the Tribunal's invitation to comment on the Tribunal's draft of PO-10, on 13 February 2013, Respondent filed a submission which included the following Applications:*

    *(a)      Allow for an opportunity to submit an expert report on the new subject matter introduced by Claimants within a period of three months as of submission of the full data information and documents as specified below;*

    *(b)      Provide for a hearing with the opportunity to address the new subject matter introduced by Claimants, in particular through examination of the parties' experts and witnesses;*

    *(c)      Order Claimants to submit data, information and documents as specified below;*

    *(d)      Allow Respondent to submit further witness and/or expert testimony relating to the new subject matter introduced by Claimants as specified below;*

    *(e)      The proposed periods for the two rounds of post-hearing briefs and the oral closing submissions shall be maintained and shall commence after the hearing on the new subject matter introduced by Claimants*

    *91      In addition, Respondent seeks clarification as to the scope of the first round of Post Hearing Briefs as specified in the second bullet point of section 2.1 and the admissibility of new documents as specified in the last bullet point of section 2.1.*



2.2.  On 14 February 2013, the Tribunal invited Claimants to submit any comments they may have. On 16 February 2013, Claimants filed a submission which included the following request:

Claimants firmly oppose the bulk of the relief requested in Respondent's Submission. Claimants do acknowledge that the Munaibay 3D information has only recently been analyzed by Ryder Scott and GCA, and Claimants do not object to cross-examination of the quantum experts regarding, and limited to, the Munaibay 3D information – if that examination is scheduled in a manner that does not delay the procedural calendar.

2.3.  Thereafter, the Parties filed further submissions providing further arguments and maintaining their above requests.

2.4.  As they are well-known to all concerned, the Tribunal will not repeat or summarize these submissions of the Parties or the arguments put forward by the Parties. Indeed, many of the arguments presented in the most recent submissions by Respondent and, in reply, by Claimants, were already presented during the January hearing and taken into account in the Tribunal's deliberations after that hearing and in the draft PO-10 resulting from these deliberations which was sent to the Parties for comments. While all arguments of the Parties have been considered by the Tribunal, in this PO the Tribunal will thus focus on the arguments it considers determinative for its conclusions and decisions.

2.5.  It is recalled that, according to Art. 19 SCC Rules, the Tribunal **may** conduct the arbitration in such a manner as it considers appropriate (19.1), but **shall** conduct the procedure in an expeditious manner (19.2). It is further recalled that, for the same purpose, Art. 37 SCC Rules provides a time limit of 6 months for the final award, and that this time limit has already been extended considerably in the present case.

2.6.  The Tribunal's duty to conduct the procedure in an impartial manner (Art. 19.2) includes an obligation to take into account the interests of both Claimants and Respondent. In that context, obviously, due process does not mean that every application of a party must be accepted. In particular, it is the Tribunal's authority and duty to decide on the most efficient consideration of evidence in a given phase of the procedure as long as both sides have an opportunity to present their case.

2.7.  In the present case, there have been long and many opportunities for the Parties to submit evidence and two hearings to orally examine witnesses and experts presented by the Parties.

2.8.  In the judgment of the Tribunal, any new information and evidence that became available to the Parties before and at the hearing on quantum, can be commented by the Parties in a following written procedure without the need for another evidentiary hearing. Therefore, the Tribunal had suggested, in its draft for this PO



    \*     *a first round of Post-Hearing Briefs within a period of  more  than two months after the hearing,*

    \*     *a hearing for oral closing arguments three weeks later,*

    \*     *a final round of Post-Hearing Briefs within a period of one further month after that hearing.*

2.9. *Nevertheless, the Tribunal considers that the hearing scheduled for 2 May 2013 could also be used for an oral examination of the technical experts of both sides on the update of the Munaibay 3D information. The Tribunal considers that these further three rounds provide the Parties more than ample opportunities to evaluate, comment, and rebut whatever they consider new information and evidence that became available before, at, and immediately after the hearing on quantum.*

2.10. *Taking all these considerations into account, Respondent's Applications are therefore dismissed in so far as they are not covered by the timetable set hereafter.*

### 3. New Timetable

*The **timetable originally set in PO-6** is changed and amended as follows:*

3.1. ***By 8 April 2013,** the Parties shall simultaneously submit their respective **1st round Post Hearing Briefs** to the Tribunal:*

-   *Regarding all issues addressed in the October 2012 and January 2013 hearings,*

-   *Regarding any submissions and documents admitted by the Tribunal and filed by the other side after the October 2012 hearing.*

-   *The Tribunal recalls that, according to section 4.5 of PO-4 and section 1.2 of PO-6, no new evidence may be submitted unless authorized by the Tribunal. However, the Parties may attach to the Post Hearing Briefs the following:*

    \*     *As provided in § 3.3.1 of the Chairman's letter of 11 September 2012, comments of their experts on issues of jurisdiction and liability, but only regarding any new developments or issues which these have not addressed in their earlier reports,*

    \*     *updates of the Reports of Claimants' and Respondent's technical experts and quantum experts heard at the hearing on quantum,*



**ARBITRATION INSTITUTE**
OF THE STOCKHOLM CHAMBER OF COMMERCE

    \*         *new documents, but only in rebuttal to submissions and documents filed by the other side filed after the October hearing and admitted by the Tribunal.*

*As a precaution, the Tribunal notifies the Parties that it does not intend to grant any extensions of the above deadline for submissions, since the following period until the Final Hearing on 2 May 2013 is required for the preparation of all concerned, and a postponement of that hearing would lead to unacceptable further delays in the procedure.*

3.2.    **On 2 and 3 May 2013, a two day Final Hearing** *will be held at the ICC Hearing Centre in Paris. The Tribunal has made a provisional reservation of rooms for this hearing at the Centre. The Parties are invited to confirm this reservation with the Centre in the same manner as they did for the two earlier hearings. Details of the conduct of this Hearing will be set by the Tribunal after consultation with the Parties closer to the time of the hearing.*

*In the morning of 2 May, the Parties' technical experts, Ryder Scott and GCA, will be examined, but exclusively limited to the update of the Munaibay 3D information. Unless the Parties agree otherwise, this examination will be conducted by conferencing similar to the manner used at the January hearing.*

*Starting in the afternoon of 2 May, the Parties may present a first round of final oral arguments.*

*In the morning of 3 May 2013, the Parties may present a second round of final oral arguments.*

*Further details of the hearing will be set by the Tribunal after the Parties' submissions have been received by 8 April 2013.*

3.3.    *By **3 June 2013**, the Parties shall simultaneously submit their respective **2nd Round Post Hearing Briefs**, but only addressing issues in rebuttal to the other side's 1st Round Post Hearing Brief and regarding issues addressed in the hearing of 2 and 3 May 2013.*

*As earlier listings partly overlapped or were incomplete since focusing on one hearing only, with these 2nd round submissions, the Parties shall file:*

- *Final complete lists of all witness statements and expert reports including their updates and attachments if any,*

- *Final complete lists of all documents submitted or handed out at the hearings with their exhibit numbers,*

- *Hyperlinked versions of the above lists on two new master USB devices, one from Claimants and one from Respondent, enabling easy access to all statements, reports, and documents listed.*



> 3.4.    *By 1 July 2013, simultaneous submission of Cost Statements by the Parties.*
>
> 3.5.    *By 8 July 2013, simultaneous submission of comments, if any, regarding the Cost Statement of the other side.*
>
> **4.    Questions**
>
> *At any time during or after the above timetable, the Tribunal may address the Parties inviting comments on specific questions on which the Tribunal feels further clarifications may be helpful.*

168. On **21 February 2013**, the Parties attempted to resolve issues with the 2D data.

169. On **22 February 2013**, Respondent sent Respondent's opening Presentation for the Hearing on Quantum in PDF format, to the Tribunal.

170. On **6 March 2013**, Respondent filed a Procedural Objection with the Tribunal.

171. By email of **7 March 2013**, the Chairman, on behalf of the Tribunal, invited Claimants to respond to this objection, by 22 March 2013.

172. On **14 March 2013**, Respondent submitted the Squire Sanders Legal Due Diligence Report, the PwC Financial and Tax Due Diligence Report, the KMG EP Presentation on Asset Assessment as at September 2008, and the RBS Presentation on Asset Assessment as at 31 July 2009, as listed in Exhibit R 41.1 and as requested by Claimants, to Claimants and to the Tribunal.

173. Claimants submitted their response to Respondent's procedural objection on **22 March 2013**.

174. On **8 April 2013**, the Parties simultaneously submitted their respective first Post Hearing Briefs and related Expert Reports to the Tribunal.

175. On **12 April 2013**, the Tribunal issued PO-11, provided below:

> ### *Procedural Order (PO) No.11*
> ### *Regarding Further Details of the Hearing*
>
> **1.    Earlier Rulings**
>
> *The Tribunal recalls its earlier rulings in section 3.2 of PO-10:*
>
> *On 2 and 3 May 2013, a two day Final Hearing will be held at the ICC Hearing Centre in Paris. The Tribunal has made a provisional reservation of rooms for this hearing at the Centre. The Parties are invited to confirm this reservation with the Centre in the same manner as they did for the two earlier hearings. Details of the conduct of this Hearing will be set by the Tribunal after consultation with the Parties closer to the time of the hearing.*



*In the morning of 2 May, the Parties' technical experts, Ryder Scott and GCA, will be examined, but exclusively limited to the update of the Munaibay 3D information. Unless the Parties agree otherwise, this examination will be conducted by conferencing similar to the manner used at the January hearing.*

*Starting in the afternoon of 2 May, the Parties may present a first round of final oral arguments.*

*In the morning of 3 May 2013, the Parties may present a second round of final oral arguments.*

*Further details of the hearing will be set by the Tribunal after the Parties' submissions have been received by 8 April 2013.*

2.       **Procedural Steps before the Hearing**

2.1.     *A live **transcript** shall be made of the Hearing. The Parties, who shall share the respective costs, shall try to agree on and make the necessary arrangements in this regard and shall inform the Tribunal accordingly by* **25 April 2013***.*

2.2.     *By **25 April 2013**, the Parties shall inform the Tribunal which persons in which functions will attend the hearing from their respective sides.*

2.3.     *In view of the great number of exhibits submitted by the Parties and in order to facilitate references and using these exhibits at the Hearing and to avoid that each member of the Tribunal has to bring all of them to the Hearing, the Parties are invited to **bring to the Hearing:***

• *for the other Party and for each member of the Tribunal **Hearing Binders** in A5 format of those exhibits or parts thereof on which they intend to rely **in their expert examination** at this hearing,*
• *together with a separate consolidated **Table of Contents** of the Hearing Binders of each Party,*
• *a **USB-Device** with the contents of the Hearing Binders for the other Party, for each member of the Tribunal, and for the Tribunal Secretary.*

3.       **Further Details Regarding the Hearing**

3.1.     *No new documents may be presented at the Hearing unless authorized in advance by the Tribunal. This also applies to documents regarding the credibility of an expert. But demonstrative exhibits may be shown using documents submitted earlier in accordance with the Timetable.*

3.2.     *The Hearing shall be held at the **ICC Hearing Centre in Paris** on 2 May and in the morning of 3 May 2013. No extension of the hearing will be possible due to other commitments of members of the Tribunal.*

3.3.     *The Tribunal sets the following **Agenda:***



1. Short **Introduction** by the Chairman of the Tribunal.

2. **Opening Statements** of up to 10 minutes by each Party

3. **Examination of the Parties' technical experts**, Ryder Scott and GCA, **but exclusively limited to the update of the Munaibay 3D information.** In view of the limited time available, **each Party has a total of one hour** for all of its following examinations:

    a)   Claimants' experts
        *       Direct examination by Claimants
        *       Cross-examination by Respondent
        *       Re-Direct, if any
        *       Re-Cross, if any

    b)   Respondent's experts
        *       Direct examination by Respondent
        *       Cross-examination by Claimants
        *       Re-Direct, if any
        *       Re-Cross, if any

    c)   Experts conferencing by questions of the Tribunal only

    d)   Follow-up questions by the Parties on the questions raised by the Tribunal, if any.

    e)   Remaining questions by the members of the Tribunal, if any.

    The above examination shall be finished by 13:00 hours, before the lunch break.

4. Starting at 14:00 hours: **1st Round Closing Statements by the Parties**

    a)   Claimants up to 90 minutes

         Coffee Break

    b)   Respondents up to 90 minutes

5. Starting at 9:30 on 3 May: **2nd Round Closing Statements by the Parties**, but only in rebuttal of the other side's 1st Round Statement:

    b)   Claimants up to one hour

         Coffee Break

    c)   Respondent up to one hour



> 6.    *Final Questions of the Tribunal, if any.*
>
> 7.    *Discussion of any remaining procedural issues, if any.*

> *3.4.    The Hearing shall end no later than 13:00 hours. An extension is not possible.*

176. On **16 April 2013**, the Tribunal wrote to the Parties to confirm that the hearing on 2 May would begin at 9:30 a.m., as usual.

177. On **17 April 2013**, Respondent wrote to the Tribunal in reference to the May hearing.

178. On **18 April 2013**, the Tribunal responded with the following email

*As the hearing is fast approaching, the Tribunal replies without delay to Respondent's letter dated 17 April 2013.*

*Point 1 of the letter regarding the 2nd Round PostHBs can be discussed at the Hearing.*

*Point 2:    The Tribunal encourages the Parties to make an effort similar to, mutatis mutandis, sections 1.5 and 1.6 of PO-6:*

*In preparation of the examination of the experts at the 2 May Hearing, the **experts** are invited to contact, either directly or with the help of the Parties, the expert from the other side and try to agree on a short note identifying the major sub-issues on which they agree and disagree.*

*The Tribunal would be grateful if, **by 29 April 2013**, the Parties could submit either the notes agreed by the experts according to section 1.5 above or separate notes of each expert in so far as they cannot agree on a joint note.*

179. On **22 April 2012**, Claimants and Respondent each wrote to the Tribunal in reference to the Hearing and explained procedural objections against the other. Respondent also submitted an updated translation of R-360.

180. On **24 April 2013**, Respondent wrote in response to Claimants' letter of 22 April 2013. In a separate email, Respondent informed the Tribunal that it had made grids prepared by GCA for its 3D seismic analysis available to Claimants through an FTP server and provided the Tribunal that data.

181. On **24 April 2013**, Claimants responded to Respondent's letter of the same date.

182. On **25 April 2013**, Respondent replied to Claimants' letter of 24 April 2013.

183. On **25 April 2013**, Claimants and Respondent provided the Tribunal a list of hearing attendees.

184. On **29 April 2013**, Respondent wrote to the Tribunal and objected to Claimants' amendments to the transcript.



185. On **29 April 2013**, Respondent sent the Joint Issue List of Ryder Scott and GCA for the testimony at the hearing to the Tribunal.

186. On **1 May 2013**, Claimants wrote in response to Respondent's letter concerning the issue of corrections to the hearing transcripts.

187. A hearing was held in Paris from **2 – 3 May 2013**. Reginald Smith, Kenneth Fleuriet, Kevin Mohr, James Toher, Heloise Herve, Amy Roebuck Frey, Alexandra Kotlyachova and Valerya Subocheva of King & Spalding appeared on behalf of Claimants. Dr. Patricia Nacimiento, Max Stein and Sven Lange of Norton Rose LLP and Joseph Tirado of Winston & Strawn LLP appeared on behalf of Respondent. A transcript was made.

188. At the end of his introduction at the start of the hearing, the Chairman informed the Parties of the following rulings from the Tribunal's deliberations prior to the hearing (quoted from the manuscript read by the Chairman, Tr. May 2013 pp. 4 – 5):

   *By their recent letters, the Parties addressed the following issues in particular:*

   *1.*     *Regarding the Testimony of Mr. Wood (Respondent's expert from GCA):*

       *Taking into account [...]*

   -     *section 3.2 of PO-10,*

   -     *and the arguments submitted by the Parties,*

   -     *and the Experts' Joint List of Issues submitted by Respondent by its mail of 30 April 2013,*

       *the Tribunal has concluded that*

   -     *Mr. Wood can be examined at this hearing*

   -     *But that the 2nd Round of Post-Hearing Briefs provides an opportunity for the Parties and their experts to submit further comments on the issues addressed.*

   *2.*     *Regarding Comments on expert reports and Claimant's objection to the 2nd Deloitte report:*

       *The Tribunal has taken note that, at the end of their letters of 24 April, the Parties agree that, with their 2nd Round Post-Hearing briefs, the Parties may submit further comments*

   -     *Both by Ryder Scott and GCA*

   -     *And by FTI and Deloitte.*

   *In fact, taking into account also the Tribunal's letter of 11 September 2012 admitting such comments as well for the experts at the Hearing on*



*Jurisdiction and Liability, this means that comments by **all** the experts may be submitted with the Parties' 2nd Round Post-Hearing Briefs, **but only in rebuttal** to the previous reports by the respective experts from the other side.*

*And from all these rulings it is obvious and confirmed by the Tribunal that these 2nd Round submissions are the final round of submissions, and that **NO further comments** may be submitted thereafter either by the Parties or by their experts.*

*However, in case it turns out that the **Tribunal has further questions** to the Parties, the Tribunal may address the Parties during the time of its deliberations.*

3.    **Regarding Transcript Corrections**

*The Tribunal points out that corrections are only necessary in so far as the transcript is incorrect **with relevance to substantial issues**.*

*Regarding the **first two** hearings, the Parties had ample time to examine the transcripts while drafting their 1st Round Post-Hearing Briefs. Regarding the very short **final hearing**, such examination can easily be done while drafting their 2nd Round Post-Hearing Briefs which are due by 3 June 2013.*

*The Tribunal **encourages the Parties** to agree on a timely procedure for joint corrections. If that cannot be achieved, each Party may submit suggested corrections to the other side **by 15 May 2013**.*

*If or in so far as the Parties cannot agree on joint proposals, each Party may submit, together with its 2nd Round Post-Hearing Briefs, its suggested corrections and comments on the suggestions of the other side. The Tribunal will examine such suggestions and take them into account in so far as they are relevant for its conclusions.*

*In view of the above, **an extension of the date set for the Post-Hearing Briefs is NOT necessary** in the view of the Tribunal, but also not possible as the planning of the Tribunal for its deliberations shortly after the deadline for the 2nd Round Post-Hearing Briefs would otherwise be delayed considerably.*

4.    ***If the Parties feel** that any **other** procedural issue has to be addressed at the beginning of this Hearing, this can be done in the short Opening Statements which follow now.*

189. After brief opening statements by Mr. Smith and Dr. Nacimiento, respectively, the Tribunal heard testimony from Mr. Michael Nowicki, Dr. Stephen Wright, and Mr. Mike Wood. The three experts also testified through witness conferencing.

190. As recorded in the transcript (page 100), at the end of the Hearing the Chairman of the Tribunal raised the following question:



*The Tribunal has, of course, taken note of the procedural objections that were put on record at an earlier stage, and we take it that these will be maintained. So my usual question at the end of a hearing only is: are there any further procedural objections at this stage regarding the way the Tribunal has conducted this procedure?*

191. The Parties replied as follows:

> *For Claimant MR SMITH: None from the Claimants.*

> *For Respondent DR NACIMIENTO: And none from Respondent.*

192. On **29 May 2013**, the Chairman, on behalf of the Tribunal, sent a letter to the Arbitration Institute of the SCC, suggesting that the SCC extend the deadline for the issuance of the Award to 31 December 2013.

193. On **3 June 2013**, Respondent sent its **Second Round Post-Hearing Brief** (RPHB 2) to the Tribunal. Respondent also submitted Deloitte GmbH 2nd Supplemental Expert Report, GCA Fourth Expert Report, the Second Expert Report of Tomas Balco, the Third Expert Report of Prof. Didenko, and the Third Expert Report of Prof. Ilyassova to the Tribunal.

194. On **3 June 2013**, Claimants submitted their **Second Round Post-Hearing Brief** (CPHB 2) to the Tribunal. Claimants also submitted the Third Maggs Report, the Third Suleymenov Report, The Second Malinovsky Opinion, the Corrected Final Hearing Transcripts, the Fourth Expert Report of Howard Rosen (FTI), the Fourth Expert Report of the Ryder Scott Company, and a photo array of all witnesses.

195. By letter of **10 June 2013**, the Arbitration Institute of the SCC decided that the Final Award shall be rendered by 2 January 2014.

196. On **1 July 2013**, Claimants and Respondent each submitted their respective Statements on Costs to the Tribunal.

197. On **8 July 2013**, Claimants and Respondent each submitted their responses to the Costs Submissions submitted by the other side.

198. On **12 December 2013**, the Arbitration Institute of the SCC issued its decision on costs, recorded later in this Award.



## E.    **Relief Sought by the Parties**

### E.I.    **Relief Sought by the Claimants**

199. Claimants' most current Request for Relief is found at ¶ 396 of their Second Post-Hearing Brief of 3 June 2013. This Request for Relief replaces those found at ¶ 664 of **Claimants' First Post-Hearing Brief** of **8 April 2013**, ¶ 626 of **Claimants' Reply Memorial on Jurisdiction and Liability** of **7 May 2011**, ¶ 99 of **Claimants' Reply Memorial on Quantum**, dated **28 May 2012** at ¶¶ 116 and 117 of **Claimants' Request for Arbitration** submitted on **26 July 2010**, and ¶ 470 of **Claimants' Statement of Claim** submitted on **18 May 2011**.

*VI.    REQUEST FOR RELIEF*

*396.    For the reasons set forth herein, Claimants respectfully request an award granting them the following relief:*

- *A declaration that Kazakhstan has violated the ECT and international law with respect to Claimants' investments;*

- *Compensation to Claimants for all damages they have suffered, as set forth in Claimants' Statement of Claim and Reply on Quantum and as further updated at the January 2013 Hearing and in Claimants' First Post-Hearing Brief, corresponding to the following amounts:*

| *Tolkyn* | *US $478,927,000* |
|---|---|
| *Borankol* | *US $197,013,000* |
| *Munaibay Oil* | *US $96,808,000* |
| *LPG Plant* | *US $245,000,000 cost plus discretionary portion of US $84,077,000* |
| *Contract 302 (other than Munaibay Oil)* | *US $31,330,000 cost plus discretionary portion of US $1,498,017,000* |

- *All costs of this proceeding, including Claimants' attorneys' fees and expenses as well as fees and expenses of the Tribunal and the SCC;*

- *Pre-award compound interest at a rate of 10.5% from October 14, 2008 to the date of the Award;*

- *An award of compound interest at a rate of 10.5% until the date of Kazakhstan's final satisfaction of the Award; and*

- *Any other relief the Tribunal may deem just and proper.*



### E.II.    Relief Sought by the Respondent

200.  Respondent's most recent Request for Relief is found at Part VI of its Second Post-Hearing Brief of 3 June 2013.  This replaces the Requests for Relief found in **Part IV of its First Post-Hearing Brief** of **8 April 2013**, Section F of **Respondent's Rejoinder on Jurisdiction and Liability**, dated **13 August 2012**, and at ¶ 58 of **Respondent's Statement of Defence**, dated **21 November 2011**.

> *1069.   The Republic requests the Arbitral Tribunal to issue:*
>
> > *(a)    an order dismissing Claimants' claims in their entirety;*
> >
> > *(b)    an order that Claimans [sic] must bear all costs of this arbitration and must reimburse Respondent all costs which Respondent incurred and will incur in this arbitration, including inter alia fees and expenses of the SCC, the Arbitral Tribunal, experts, consultants, witnesses and legal counsel plus interest. Respondent hereby reserves the right to detail and document its claim for such foregoing costs, which by their very nature are continuing, at the appropriate future time as directed by the Arbitral Tribunal*

## F.    Factual Background

201.  The Tribunal has considered all of the facts presented by the Parties, even if not explicitly stated below.  This section summarizes the facts and events leading to the current dispute, as presented by the Parties in their submissions and testimony and without prejudice to the relevance the Tribunal may give to facts and issues.  More comprehensive coverage of the facts can be found in C-0 ¶¶ 5 *et seq.*, C-I ¶¶ 2 - 238, C-II ¶¶ 16 - 42 and 210 – 422, CPHB 2 ¶¶ 37 – 196; R-I ¶¶ 4,17 – 31, R-II ¶¶ 241 – 832, RPHB 1 ¶¶ 15 – 413; and RPHB 2 ¶¶ 15 – 382.

### F.I.    General Background Information

202.  Natural hydrocarbon resources are one of the principal assets of the Republic. Within the next ten years, Kazakhstan will be among the top five oil producers, holding 30 billion barrels of proven oil and 85 trillion cubic feet of gas reserves. KPM and TNG were important to the economic framework of and have played a strategic role in the Mangystau region's economy, providing 80% of the fuel needed for the local power plant and employing a considerable number of people. (R-I ¶¶ 4.1, 31.52; R-II ¶ 322).

203.  The Borankol and Tolkyn fields are approximately 50 km apart in the Mangystau region.  Aktau, the capital of the Mangystau region, is approximately 400 and 500 km from the Borankol and the Tolkyn fields, respectively.  The closest town to the Borankol field is Opornaya, which is approximately 15 km away.  (C-I ¶ 52).

204.  The Respondent is the government of the Republic of Kazakhstan, which is the sovereign body responsible for managing the investment in and exploitation of Kazakhstan's natural resources. (R-I ¶ 4.4).

